## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| GO-PAK PAPER PRODUCTS VIETNAM CO., LTD. )<br><br>Plaintiff, )<br><br>v. )<br><br>UNITED STATES, )<br><br>Defendant, )<br><br>AMERICAN PAPER PLATE COALITION, )<br><br>Defendant-Intervenor. ) | Court No. 25-00070<br>Before: Senior Judge<br>            Richard K Eaton |

### ORDER

Upon consideration of the motion of Plaintiff Go-Pak Paper Products Vietnam Co., Ltd. ("Go-Pak Vietnam") for judgment on the agency record pursuant to USCIT Rule 56.2, and all other papers and proceedings; it is:

**ORDERED** that Go-Pak Vietnam's motion is granted; and it is further

**ORDERED** that the final results with respect to Certain Paper Plates From the Socialist Republic of Vietnam, 90 Fed. Reg. 8,265 (Dep't Commerce January 28, 2025) (final affirmative determination of sales at less than fair value and final affirmative determination of critical circumstances, in part) ("Final Determination") are remanded to the U.S. Department of Commerce with instructions to take such further action as required by the Court's decision in this matter.

By: _____
        Richard K. Eaton, Senior Judge

**Court No. 25-00070**                                                    **Page 2**

Dated: _____
                    New York, New York

## UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |  |
|---|---|---|
| GO-PAK PAPER PRODUCTS VIETNAM CO., LTD. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Court No. 25-00070 |
| | ) | Before: Senior Judge |
| | ) |       Richard K Eaton |
| UNITED STATES, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| AMERICAN PAPER PLATE COALITION, | ) | |
| | ) | |
| Defendant-Intervenor. | ) | |

## PLAINTIFF'S RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD

Pursuant to Rule 56.2 of the Rules of the Court, Plaintiff Go-Pak Paper Products Vietnam Co., Ltd. ("Go-Pak Vietnam"), moves for judgment on the agency record with respect to its complaint challenging the final results with respect to <u>Certain Paper Plates From the Socialist Republic of Vietnam</u>, 90 Fed. Reg. 8,265 (Dep't Commerce January 28, 2025) (final affirmative determination of sales at less than fair value and final affirmative determination of critical circumstances, in part) ("<u>Final Determination</u>"), and accompanying Issues and Decision Memorandum. The <u>Final Determination</u> covers U.S. entries made during the period of investigation from July 1, 2023, through December 31, 2023 ("POI").

Go-Pak Vietnam respectfully moves, for the reasons explained in the accompanying memorandum of law, that the Court hold that the contested portions of the <u>Final Determination</u> are contrary to law, not supported by substantial evidence, arbitrary and capricious, and otherwise not in accordance with law. Go-Pak Vietnam further moves for the Court to remand

**Court No. 25-00070, Motion**                                    **Page 2**

this matter to the U.S. Department of Commerce for disposition consistent with the order and

opinion of the Court.

                                        Respectfully submitted,
                                        /s/ Jonathan M. Freed
                                        Jonathan M. Freed
                                        Aqmar Rahman
                                        Didie Muller
                                        **TRADE PACIFIC PLLC**
                                        700 Pennsylvania Avenue, SE
                                        Suite 500
                                        Washington, D.C.  20003
                                        (202) 223-3760

                                        Counsel to Plaintiff Go-Pak Paper Products
                                        Vietnam Co., Ltd.

Dated:  August 28, 2025

## UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| GO-PAK PAPER PRODUCTS VIETNAM CO., LTD. | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) Court No.  25-00070 ) Before:  Senior Judge ) Richard K Eaton |
| UNITED STATES, | ) ) |
| Defendant, | ) ) |
| AMERICAN PAPER PLATE COALITION, | ) ) |
| Defendant-Intervenor. | ) ) |

### CERTIFICATE OF COMPLIANCE

The undersigned counsel at Trade Pacific PLLC hereby certifies that the Memorandum of Law in Support of Plaintiff's Rule 56.2 Motion for Judgment Upon the Agency Record, dated August 28, 2025, complies with the word-count limitation described in the Standard Chambers Procedures.  The memorandum of law contains 6,839 words according to the word-count function of the word-processing software used to prepare the memorandum.

Respectfully submitted,

/s/ Jonathan M. Freed
Jonathan M. Freed
**TRADE PACIFIC PLLC**
700 Pennsylvania Avenue, SE, Suite 500
Washington, D.C.  20003
(202) 223-3760

Counsel to Plaintiff Go-Pak Paper Products
Vietnam Co., Ltd.

Dated:  August 28, 2025

## UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| GO-PAK PAPER PRODUCTS VIETNAM CO., LTD. | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) ) |
| UNITED STATES, | ) ) |
| Defendant, | ) ) |
| AMERICAN PAPER PLATE COALITION, | ) ) |
| Defendant-Intervenor. | ) ) ) |

Court No.  25-00070
Before:  Senior Judge
          Richard K Eaton

## MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT UPON THE AGENCY RECORD OF PLAINTIFF GO-PAK PAPER PRODUCTS VIETNAM CO., LTD.

Jonathan M. Freed
Aqmar Rahman
Didie Muller
**TRADE PACIFIC PLLC**
700 Pennsylvania Avenue, SE, Suite 500
Washington, D.C.  20003
(202) 223-3760

Counsel to Plaintiff Go-Pak Paper Products
Vietnam Co., Ltd.

Dated:  August 28, 2025

# TABLE OF CONTENTS

Page

**TABLE OF CONTENTS** ................................................................................ i

**TABLE OF AUTHORITIES** ........................................................................ ii

I.      STATEMENT PURSUANT TO RULE 56.2(c) ............................................ 1

      A.    Administrative Determination Under Review ....................................... 1

      B.    Issues Presented ................................................................................... 2

      C.    Standard of Review ............................................................................. 2

II.     STATEMENT OF FACTS ......................................................................... 3

III.    ARGUMENT .............................................................................................. 5

      A.    Commerce's Determination to Use the Financial Statements of PT Suparma Tbk ("Suparma") Was Not Supported by Substantial Evidence and Was Other Not in Accordance with Law ....................................................................... 5

            1.  Factual Background ...................................................................... 5

            2.  Substantial Record Evidence Demonstrates That Suparma Is an Integrated Producer Using Paper Pulp as Its Raw Material, Whereas Go-Pak Vietnam Purchases Finished Paper as the Input for Producing the Subject Merchandise .... 8

            3.  Substantial Record Evidence Demonstrates That Suparma Is Not a Producer of Comparable Merchandise .................................................................. 12

      B.    Commerce's Determination to Use a Simple Average of the Average Unit Values from Two Different Harmonized Tariff Schedule Subheadings (i.e., 4810.32.90 and 4810.92.90) to Value Go-Pak Vietnam's Paper Input Was Not Supported by Substantial Evidence and Was Not in Accordance with Law ............................... 16

            1.  Factual Background ...................................................................... 16

             2.  Substantial Evidence on the Record Supported Go-Pak Vietnam's Paper Does Not Possess the Characteristics that Define the Classification Under HTS 4810.32.90 ................................................................................. 18

IV.    CONCLUSION ....................................................................................... 24

i

# TABLE OF AUTHORITIES

**Cases**

Ceramica Regiomontana, S.A. v. United States, 10 CIT 399, 636 F. Supp. 961 (1986), aff'd, 810 F.2d 1137 (Fed. Cir. 1987)................................................................................................2

Appleton Papers Inc. v. United States, 37 CIT 1034, 929 F.Supp.2d 1329 (2013)........................2

Star Fruits S.N.C. v. United States, 393 F.3d 1277 (Fed. Cir. 2005)................................................2

Universal Camera Corp. v. NLRB, 340 U.S. 474 (1951) ...........................................................3, 15

Consolo v. Fed. Maritime Comm'n, 383 U.S. 607 (1966) .........................................................3, 15

Consolidated Edison Co. of New York v. NLRB, 305 U.S. 197 (1938) .........................................3

PAM, S.p.A. v. United States, 582 F.3d 1336, 1339 (Fed. Cir. 2009) ...........................................3

Burlington Truck Lines, Inc. v. United States, 371 U.S. 156 (1962) .......................................3, 15

Nucor Corp. v. United States, 32 CIT 1380, 594 F. Supp. 2d 1320, 1331-32 (2008) ....................3

Rhone-Poulenc, Inc. United States, 20 CIT 573, 927 F. Supp. 451 (1996)....................................3

Asociación Colombiana de Exportadores de Flores v. United States, 22 CIT 173, 6 F. Supp. 2d 865 (1998)...................................................................................................................3, 22, 24

Fine Furniture (Shanghai) Limited v. United States, 182 F.Supp.3d 1350 (2016)......................10

Ad Hoc Shrimp Trade Action Comm. v. United States, 70 F. Supp. 3d 1328, 1341 (Ct. Int'l Trade 2015)...............................................................................................................................10

SKF USA Inc. v. United States, 630 F.3d 1365, 1374 (Fed. Cir. 2011)..................................10, 11

**Statutes**

28 U.S.C. § 1581(c) ...........................................................................................................................2

19 U.S.C. § 1516a(b)(1)(B)(i)............................................................................................................2

19 U.S.C. § 1677b(c)(1)........................................................................................................8, 18, 24

5 U.S.C. § 706(2) .............................................................................................................................15

**Regulation**

19 C.F.R. § 351.408(c)(4) ............................................................8

**Administrative Determinations**

*Certain Paper Plates From the Socialist Republic of Vietnam: Final Affirmative Determination of Sales at Less Than Fair Value and Final Affirmative Determination of Critical Circumstances, in Part*, 90 Fed. Reg. 8,265 (January 28, 2025) and Accompanying Issues and Decision Memorandum ............................................1, 5, 8, 12, 13, 17, 18, 21

*Certain Paper Plates From the People's Republic of China, Thailand, and the Socialist Republic of Vietnam: Initiation of Less-Than-Fair-Value Investigations*, 89 Fed. Reg. 14,046 (Dep't Commerce Feb. 26, 2024) ............................................................3

*Certain Paper Plates From the Socialist Republic of Vietnam: Preliminary Affirmative Determination of Sales at Less Than Fair Value, Preliminary Affirmative Determination of Critical Circumstances, in Part, Postponement of Final Determination, and Extension of Provisional Measures*, 89 Fed. Reg. 72375 (September 5, 2024), and accompanying Decision Memorandum for the Preliminary Affirmative Determination (August 29, 2024) ...4, 7, 16, 17, 21

*Pure Magnesium from the People's Republic of China: Final Results of the 2009-2010 Antidumping Duty Administrative Review of the Antidumping Duty Order*, 76 Fed. Reg. 76945 (December 9, 2011) and the accompanying Issues and Decision Memorandum .....................8, 9

*Notice of Proposed Rulemaking and Request for Public Comments: Antidumping Duties; Countervailing Duties*, 61 Fed. Reg. 7308 (February 27, 1996) .......................................9

*Multilayered Wood Flooring From the People's Republic of China: Amended Final Results of Antidumping Duty Administrative Review; 2011–2012*, 79 Fed. Reg. 35,314 (June 20, 2014), and accompanying Issues and Decision Memorandum .............................................9, 10

*Certain Frozen Warmwater Shrimp From the People's Republic of China: Final Results of Administrative Review; 2011–2012*, 78 Fed. Reg. 56,209 (September 12, 2013), and accompanying Issues and Decision Memorandum .......................................................10

*Certain Aluminum Foil from the People's Republic of China: Final Results of Antidumping Administrative Review and Final Determination of No Shipments; 2021-2022*, 88 Fed. Reg. 76,734 (November 7, 2023), and accompanying Issues and Decision Memorandum ..................10

*Notice of Preliminary Determination of Sales at Less Than Fair Value, Negative Preliminary Determination of Critical Circumstances and Postponement of Final Determination: Certain Frozen and Canned Warmwater Shrimp from the Socialist Republic of Vietnam*, 69 Fed. Reg. 42672 (July 16, 2004), unchanged in *Final Determination of Sales at Less Than Fair Value: Certain Frozen and Canned Warmwater Shrimp from the Socialist Republic of Vietnam*, 69 Fed. Reg. 71005 (December 8, 2004) ..................................................21

<u>Certain Crystalline Silicon Photovoltaic Products From the People's Republic of China: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2014–2016</u>, 82 Fed. Reg. 32170 (July 12, 2017), accompanying Issues and Decision Memorandum ........................................................................................................................22

<u>Polyethylene Terephthalate Film, Sheet, and Strip from the People's Republic of China:  Final Results of the First Antidumping Administrative Review</u>, 76 Fed. Reg. 9753 (February 22, 2011), and accompanying Issues and Decision Memorandum (February 11, 2011)...............22, 23

<u>Multilayered Wood Flooring from the People's Republic of China:  Final Determination of Sales at Less Than Fair Value</u>, 76 Fed. Reg. 64,318 (October 18, 2011), and accompanying Issues and Decision Memorandum (October 11, 2011) ................................................................................23

<u>Non-Refillable Steel Cylinders from the People's Republic of China:  Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2020-2022</u>, 88 Fed. Reg. 85,217 (December 7, 2023), and accompanying Issues and Decision Memorandum (November 30, 2023) ................................................................................................23

<u>Certain Steel Nails from the People's Republic of China: Final Results of Third Antidumping Duty Administrative Review; 2010-2011</u>, 78 Fed. Reg. 166,51 (March 18, 2013), and accompanying Issues and Decision Memorandum (March 5, 2013)............................................23

**<u>Other Authorities</u>**

Policy Bulletin 04.1 ....................................................................................................9, 15

**NON-CONFIDENTIAL VERSION**

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR JUDGMENT UPON THE AGENCY RECORD

## I.    STATEMENT PURSUANT TO RULE 56.2(c)

Plaintiff Go-Pak Paper Products Vietnam Co., Ltd. ("Go-Pak Vietnam") submits this brief in support of its Motion for Judgment upon the Agency Record pursuant to USCIT Rule 56.2.

### A.    Administrative Determination Under Review

This action is an appeal from the U.S. Department of Commerce's ("Commerce") final determination in the antidumping duty ("AD") administrative investigation of Certain Paper Plates from the Socialist Republic of Vietnam ("Vietnam").  See Certain Paper Plates From the Socialist Republic of Vietnam: Final Affirmative Determination of Sales at Less Than Fair Value and Final Affirmative Determination of Critical Circumstances, in Part, 90 Fed. Reg. 8,265 (January 28, 2025) ("Final Determination"), P.R. 237, and accompanying Issues and Decision Memorandum for the Final Affirmative Determination of Sales at Less Than Fair Value of Certain Paper Plates from the Socialist Republic of Vietnam (January 21, 2025) ("IDM"), P.R. 227, and accompanying Final Analysis Memorandum (January 21, 2025) ("Final Analysis Memo"), C.R. 184, P.R. 229; Final Surrogate Values Memorandum (January 21, 2025) ("Final SV Memo"), P.R. 232.

Commerce published the antidumping duty order on Certain Paper Plates from Vietnam in the Federal Register on March 20, 2025.  See Certain Paper Plates From the People's Republic of China, Thailand, and the Socialist Republic of Vietnam: Antidumping Duty Orders, 90 Fed. Reg. 13,139 (March 20, 2025) ("AD Order"), P.R. 249, which covers entries of paper plates imported from Vietnam during the period of investigation from July 1, 2023, through December 31, 2023.

**NON-CONFIDENTIAL VERSION**

**B.  Issues Presented**

Plaintiff seeks judgment on the agency record with respect to the following issues:

1)      Whether Commerce erred in calculating surrogate financial ratios for Go-Pak

Vietnam because Commerce relied on the financial statements of PT Suparma

Tbk ("Suparma"), which (a) operates as an integrated producer using paper pulp

as its input, whereas Go-Pak Vietnam purchases paper to produce paper plates,

and (b) is not a producer of comparable merchandise.

2)      Whether Commerce erroneously determined to use a simple average of the

average unit values from two different HTS subheading (i.e., 4810.32.90 and

4810.92.90) to value Go-Pak Vietnam's paper input because HTS 4810.32.90 is

not the correct tariff classification for paper input used by the respondent.

**C.  Standard of Review**

The court has jurisdiction pursuant to 28 U.S.C. § 1581(c).  In reviewing the final

determination of an antidumping duty ("AD") administrative investigation, the Court holds as

unlawful agency determinations that are not supported by substantial evidence on the record, or

otherwise not in accordance with law.  19 U.S.C. § 1516a(b)(1)(B)(i).

The Court "will not allow an agency, under the guise of lawful discretion, to contravene

or ignore the intent of the legislature or the guiding purpose of the statute."  Ceramica

Regiomontana, S.A. v. United States, 10 CIT 399, 405, 636 F. Supp. 961, 966 (1986), aff'd, 810

F.2d 1137 (Fed. Cir. 1987).  Moreover, an abuse of discretion occurs where the decision is

"based on an erroneous interpretation of the law, on factual findings that are not supported by

substantial evidence, or an unreasonable judgment in weighing relevant factors."  Appleton

Papers Inc. v. United States, 37 CIT 1034, 1037, 929 F.Supp.2d 1329, 1334 (2013) (citing Star

Fruits S.N.C. v. United States, 393 F.3d 1277, 1281 (Fed. Cir. 2005)).

**NON-CONFIDENTIAL VERSION**

Additionally, "{t}he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951). Substantial evidence is "more than a mere scintilla," and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 619-20 (1966) (quoting Consolidated Edison Co. of New York v. NLRB, 305 U.S. 197, 229 (1938)); PAM, S.p.A. v. United States, 582 F.3d 1336, 1339 (Fed. Cir. 2009). In order for a determination to satisfy this standard, "{t}here must be a rational connection between the facts found and the choice made." Burlington Truck Lines, Inc. v. United States, 371 U.S. 156, 168 (1962); Nucor Corp. v. United States, 32 CIT 1380, 594 F. Supp. 2d 1320, 1331-32 (2008).

The Court has found Commerce's determinations unlawful "where Commerce has relied on inadequate facts or reasoning, or failed to provide an adequate basis for its conclusions." Rhone-Poulenc, Inc. United States, 20 CIT 573, 575, 927 F. Supp. 451, 454 (1996); see also Asociación Colombiana de Exportadores de Flores v. United States, 22 CIT 173, 184–85, 6 F. Supp. 2d 865, 879–80 (1998) (stating that a change in practice requires Commerce to explain the basis for its change and that such basis must be in accordance with law and supported by substantial evidence).

## II.    STATEMENT OF FACTS

On February 14, 2024, Commerce initiated a less-than-fair-value ("LTFV") investigation on imports of certain paper plates from Vietnam. See Certain Paper Plates From the People's Republic of China, Thailand, and the Socialist Republic of Vietnam: Initiation of Less-Than-Fair-Value Investigations, 89 Fed. Reg. 14,046 (Dep't Commerce Feb. 26, 2024), P.R. 41 ("Initiation Notice").

On April 22, 2024, Commerce issued the initial questionnaires to Go-Pak Vietnam.  See Letter from Commerce, "Certain Paper Plates from the Socialist Republic of Vietnam: Initial Questionnaire," (Apr. 22, 2024), P.R. 78 ("Go-Pak IQR").

On August 29, 2024, Commerce published the preliminary determination in the investigation of sales at less than fair value of certain paper plates from the Socialist Republic of Vietnam, in which it calculated a preliminary AD rate of 0 percent ad valorem for Plaintiff.  See Certain Paper Plates From the Socialist Republic of Vietnam: Preliminary Affirmative Determination of Sales at Less Than Fair Value, Preliminary Affirmative Determination of Critical Circumstances, in Part, Postponement of Final Determination, and Extension of Provisional Measures, 89 Fed. Reg. 72375 (September 5, 2024) ("Preliminary Determination"), P.R. 198, and accompanying Decision Memorandum for the Preliminary Affirmative Determination (August 29, 2024) ("PDM"), P.R. 187.  First, Commerce preliminarily relied on the audited 2023 financial statements of both Suparma and PT Alkindo Naratama Tbk ("Alkindo") to calculate the surrogate financial ratios.  PDM at 23–24.  Second, Commerce determined that Go-Pak Vietnam's paper input was appropriately classified under HTS 4810.92.90, rather than under HTS 4810.32.90 as proposed by Petitioner.  See Preliminary Surrogate Values Memorandum (August 29, 2024) ("Prelim SV Memo"), at 3–4, P.R. 188.

On November 14, 2024, Plaintiff submitted a case brief commenting on certain issues from the Commerce's preliminary determination in the above-referenced proceeding.  See Case Brief from Trade Pacific PLLC, "Case Brief of Go-Pak Vietnam," (November 14, 2024), P.R. 218.  First, Go-Pak Vietnam argued that Suparma operates as an integrated producer using paper pulp as its input, whereas Go-Pak Vietnam purchases paper to produce paper plates.  Id., at 6. Second, Go-Pak Vietnam argued that Suparma is not a producer of comparable merchandise

**NON-CONFIDENTIAL VERSION**

because Go-Pak Vietnam purchases rolls of paper and converts them into plates, cups, trays, and other food-contact packaging, whereas Suparma manufactures paper itself.  Id., at 3–6.

On January 21, 2025, Commerce published the Final Determination in which it calculated a weighted-average dumping margin of 30.42 percent ad valorem for Go-Pak Vietnam.  See Certain Paper Plates From the Socialist Republic of Vietnam: Final Affirmative Determination of Sales at Less Than Fair Value and Final Affirmative Determination of Critical Circumstances, in Part, 90 Fed. Reg. 8,265 (January 28, 2025) ("Final Determination"), P.R. 237, and accompanying Issues and Decision Memorandum (January 21, 2025) ("IDM"), P.R. 227.  First, Commerce continued to find that Suparma was a producer of comparable merchandise and relied on its financial statements to calculate surrogate financial ratios for Go-Pak Vietnam.  IDM at Comment 2, P.R. 227.  Second, Commerce reversed course and determined that Go-Pak Vietnam's paper input should be valued using a simple average of the average unit values ("AUVs") from HS subheadings 4810.32.90 and 4810.92.90, rather than selecting a single AUV (i.e., 4810.92.90).  IDM at Comment 1, P.R. 227.

This appeal followed.


III.    **ARGUMENT**

    A.  **Commerce's Determination to Use the Financial Statements of PT Suparma Tbk ("Suparma") Was Not Supported by Substantial Evidence and Was Other Not in Accordance with Law**

        1.  **Factual Background**

In Go-Pak Vietnam's First SV Submission, Go-Pak Vietnam provided the audited 2023 financial statements from Alkindo, an Indonesian producer of paper bowls, paper cups, paper food boxes, and other paper products (i.e., comparable merchandise).  See Letter from Trade Pacific PLLC, "Paper Plates from the Socialist Republic of Vietnam – Comments on Surrogate

Values" (June 20, 2024) ("Go-Pak Vietnam's First SV Submission"), at Exhibit SV-9, P.R. 125. In the same submission, Go-Pak Vietnam provided the web excerpts showing the comparable merchandise produced by Alkindo, as well as Commerce's surrogate value memorandum from a recent investigation of paper shopping bags from Vietnam wherein it relied on the 2022 audited financial statement of Alkindo to determine the surrogate financial ratios.  Id. at Exhibits SV-11 and SV-12, P.R. 126.

In Petitioner's First SV Submission, the petitioner presented the 2023 annual report and company information for an Indonesia integrated producer of tissue paper and kraft paper— Suparma.  See Letter from The Bristol Group PLLC, "Paper Plates from the Socialist Republic of Vietnam – Petitioner's Initial Surrogate Value Submission" (June 20, 2024) ("Petitioner's First SV Submission"), at Exhibit 5, P.R. 120–123.

In Go-Pak Vietnam's Rebuttal SV Submission, Go-Pak Vietnam provided Exhibits 2A and 2B to evidence that, unlike Go-Pak Vietnam, Suparma is an integrated producer which uses paper pulp as its raw material to make paper.  See Letter from Trade Pacific PLLC, "Paper Plates from the Socialist Republic of Vietnam – Rebuttal Comments on Surrogate Values" (July 3, 2024) ("Go-Pak Vietnam's Rebuttal SV Submission"), at Exhibits 2A to 2B, P.R. 146–149. Additionally, Exhibits 1A through 1E to demonstrate that Suparma operates in a different industry compared to Go-Pak Vietnam.  See id., at Exhibits 1A to 1E, P.R. 146.

Go-Pak Vietnam's Sections C and D questionnaire provides a step-by-step description of its paper plate production process which begins with rolls of paper which then are printed, die-cut for plate-forming, packaged, and final quality tested.  See Response from Trade Pacific PLLC, "Paper Plates from the Socialist Republic of Vietnam: Sections C and D Questionnaire

Ct. No. 25-00070                                       NON-CONFIDENTIAL VERSION

Response" (June 12, 2024) ("Go-Pak Vietnam's CDQR"), at Exhibits D-4 and D-5, C.R. 46, P.R. 116.

As stated in its third supplemental questionnaire response, Go-Pak Vietnam manufactures paper plates using GC2 i-bulk paper, which it purchases as finished paper from two suppliers to serve as the primary input material.  See Response from Trade Pacific PLLC, "Paper Plates from the Socialist Republic of Vietnam: Third Supplemental Questionnaire," (July 29, 2024) ("Go-Pak Vietnam's Supp3 Response"), at SD3-4 and SD3-5, C.R. 96, P.R. 169.

In the Preliminary Determination, Commerce determined that Suparma is a producer of "merchandise comparable to the subject merchandise." See Certain Paper Plates From the Socialist Republic of Vietnam: Preliminary Affirmative Determination of Sales at Less Than Fair Value, Preliminary Affirmative Determination of Critical Circumstances, in Part, Postponement of Final Determination, and Extension of Provisional Measures, 89 Fed. Reg. 72375 (September 5, 2024) ("Preliminary Determination"), P.R. 198, and accompanying Decision Memorandum for the Preliminary Affirmative Determination (August 29, 2024) ("PDM"), at 23, P.R. 187. Commerce preliminarily relied on the audited 2023 financial statements of both Suparma and Alkindo to value overhead, SG&A expenses, and profit, finding that "the averages of the financial ratios of Suparma and Alkindo are appropriate to approximate the financial costs of the Go-Pak Vietnam's production of the subject merchandise, reflect a period contemporaneous with the POI, and are the best available information to calculate surrogate financial ratios."  Id. at 23–24.

In its Case Brief, Go-Pak Vietnam indicated that Suparma's integrated production process—using virgin pulp and waste paper to manufacture paper, tissue, and tissue towel—is fundamentally different from Go-Pak Vietnam's operations, as Go-Pak Vietnam does not

produce paper but instead purchases finished paper as the raw material to manufacture paper plates.  See Case Brief from Trade Pacific PLLC, "Paper Plates from the Socialist Republic of Vietnam: Case Brief of Go-Pak Vietnam," (November 14, 2024) ("Go-Pak Vietnam's Case Brief"), at 6–7, P.R. 218.

In the Final Determination, Commerce continued to find that Suparma was a producer of comparable merchandise and relied on its financial statements to calculate surrogate financial ratios for Go-Pak Vietnam.  IDM at Comment 2, P.R. 227.  Commerce explained that Suparma produced laminated paper used for holding, placing, and wrapping food, similar to paper plates and bowls.  Id.  Commerce determined that Suparma's production facility also processed paper inputs into laminated products for packaging cooked food.  Id.  Based on this finding, Commerce concluded that the production experiences of Go-Pak Vietnam and Suparma were not so different as to disqualify Suparma's financial statements from use in this investigation.  Id.

## 2. Substantial Record Evidence Demonstrates That Suparma Is an Integrated Producer Using Paper Pulp as Its Raw Material, Whereas Go-Pak Vietnam Purchases Finished Paper as the Input for Producing the Subject Merchandise

Commerce's decision to base financial ratios on Suparma's financial statements was unsupported by substantial evidence.  Substantial record evidence shows that Suparma operates as an integrated producer using paper pulp as its raw material, while Go-Pak Vietnam purchases finished paper as the input for producing the subject merchandise.

Under section 773(c)(1) of the Tariff Act, 19 U.S.C. § 1677b(c)(1), Commerce must determine normal value in non-market economy cases using the value of factors of production plus amounts for expenses and profit.  Pursuant to 19 C.F.R. § 351.408(c)(4), Commerce calculates financial ratios for overhead, SG&A, and profit using surrogate financial statements from producers of comparable merchandise in the surrogate country.  In selecting financial

**NON-CONFIDENTIAL VERSION**

statements, Commerce's policy is to prioritize "specificity, contemporaneity, and quality of the data." See, e.g., <u>Pure Magnesium from the People's Republic of China: Final Results of the 2009-2010 Antidumping Duty Administrative Review of the Antidumping Duty Order</u>, 76 Fed. Reg. 76945 (December 9, 2011) and the accompanying IDM at Comment 5. See also Policy Bulletin 04.1.

Commerce's regulation, 19 CFR 351.408(c)(3), and its explanations when it implemented them highlight the importance of specificity in the selection of financial ratios. In calculating financial ratios, Commerce should utilize the data sourced from producers of **identical or comparable** merchandise in the surrogate country, aiming to obtain data that is "as specific as possible to the subject merchandise." See <u>Notice of Proposed Rulemaking and Request for Public Comments: Antidumping Duties; Countervailing Duties</u>, 61 Fed. Reg. 7308, 7345-46 (February 27, 1996). Commerce explained its approach in analyzing comparable merchandise in Policy Bulletin 04.1, where Commerce recognized that any analysis of comparable merchandise must be done on a case-by-case basis:

> In other cases, however, where there are major inputs, i.e., inputs that are specialized or dedicated or used intensively, in the production of the subject merchandise, e.g., processed agricultural, aquatic and mineral products, comparable merchandise should be identified **narrowly**, **on the basis of a comparison of the major inputs**, including energy, where appropriate.

Policy Bulletin 04.1 at 3 (emphasis added).

More importantly, Commerce has a preference to use financial statements from companies that are at a **similar level of integration** to the respondent in the proceeding. See <u>Multilayered Wood Flooring From the People's Republic of China: Amended Final Results of Antidumping Duty Administrative Review; 2011–2012</u>, 79 Fed. Reg. 35,314 (June 20, 2014), and accompanying IDM, at Comment 2, at 22 (stating "the Department has a preference to use financial statements from companies that are at a similar level of integration as the respondents

involved in the proceeding"); Certain Frozen Warmwater Shrimp From the People's Republic of China: Final Results of Administrative Review; 2011–2012, 78 Fed. Reg. 56,209 (September 12, 2013), and accompanying IDM, at Comment 2, at 10 n. 42 (recognizing that the respondent used an integrated production process that both farms and processes shrimp in selecting appropriate financial ratios); Certain Aluminum Foil from the People's Republic of China: Final Results of Antidumping Administrative Review and Final Determination of No Shipments; 2021-2022, 88 Fed. Reg. 76,734 (Nov. 7, 2023), and accompanying IDM, at Comment 2, at 7 (concluding that "Romanian company, Alro S.A./Alro Group, represents the best available information on the record" because the respondent, "like Alro S.A./Alro Group, is an integrated producer of aluminum products").

In addition, judicial precedent supports the notion that Commerce must consider whether the surrogate producer operates at a comparable level of integration to the respondent.  In Fine Furniture (Shanghai) Limited v. United States, the Court remanded the matter to Commerce because Commerce failed to consider the fact that record evidence demonstrated Mount Banahaw was also an integrated producer of veneer, comparable to Fine Furniture, and Commerce ignored this evidence when it excluded Banahaw's financial statements in favor of only Tagum and RPC.  182 F.Supp.3d 1350, 1360 (2016).  In Ad Hoc Shrimp Trade Action Comm. v. United States, the Court remanded the matter to Commerce because Commerce failed to consider additional record evidence showing that the Thai company was also an integrated producer, like Regal and the Indian company, rendering its determination unsupported by substantial evidence.  70 F. Supp. 3d 1328, 1341 (Ct. Int'l Trade 2015).

By continuing to rely on the Suparma statement in the Final Determination, Commerce failed to address arguments and record evidence that Suparma was an integrated producer and

**NON-CONFIDENTIAL VERSION**

not comparable to Go-Pak Vietnam.  Where parties raise arguments supported by record

evidence, Commerce is obligated to address them, and failure to do so renders its decision

unsupported by substantial evidence.  See e.g., SKF USA Inc. v. United States, 630 F.3d 1365,

1374 (Fed. Cir. 2011) ("Commerce also has an 'obligation' to address important factors raised by

comments from petitioners and respondents.").

Substantial evidence demonstrates that Suparma is an integrated producer that

manufactures paper from pulp, whereas Go-Pak Vietnam is not integrated and instead purchases

finished paper to produce paper plates.  Exhibit 2A of Go-Pak Vietnam's Rebuttal SV

Submission contains Suparma's company website excerpts, stating that Suparma is "a leading

**paper manufacturer company** which focuses in providing reliable and high quality paper."

Go-Pak Vietnam's Rebuttal SV Submission, at Exhibit 2A, P.R. 146–148.  As stated in the same

source, Suparma is "a manufacturing company that produces tissue and paper **using virgin pulp**

**and waste paper as our raw material**."  Id. at Exhibit 2A, P.R. 146.  This evidence

demonstrates that Suparma's business model centers on integrated paper manufacturing from

pulp.

Unlike Suparma, Go-Pak Vietnam does not manufacture paper at all but instead

purchases finished paper to produce paper plates.  Exhibit D-4 of Go-Pak Vietnam's Section D

response provides a diagram of the production process for the subject merchandise.  See Go-Pak

Vietnam's CDQR, at Exhibit D-4, C.R. 46, P.R. 116.  As described in the narrative of DQR,

> First, Go-Pak Vietnam prints the design of each product onto the material paper.
> Next, the material paper is die-cut along the design outline, creating both scrap
> paper, which is transferred to the scrap warehouse, and pieces of paper that
> proceed to the next production steps.  These paper pieces are then processed
> through a plate-forming machine, which presses the middle of the paper to create
> a concave shape.  Finally, the paper plates are packaged in wrapping films,
> packed into carton boxes, and sent for quality testing to ensure they meet the
> required standards.

**NON-CONFIDENTIAL VERSION**

Id.  Further, as stated in its third supplemental questionnaire response, Go-Pak Vietnam produces paper plates using GC2 i-bulk paper, which Go-Pak Vietnam purchases from two paper suppliers.  Go-Pak Vietnam's Supp3 Response, at SD3-4 and SD3-5, C.R. 96, P.R. 169.

In its Case Brief, Go-Pak Vietnam explained that Suparma's integrated production— using pulp to make paper, tissue, and tissue towel—differs fundamentally from Go-Pak Vietnam's operations, which rely on purchased paper as the raw material for producing paper plates.  See Go-Pak Vietnam's Case Brief, at 6–7, P.R. 218.  The surrogate ratios of overhead, SG&A, and profit are expressed relative to the company's material, labor, and energy expense.  For a company like Suparma producing paper from relatively low value pulp, the overhead needed to convert this low value pulp into paper should be relatively high.  In contrast, Go-Pak Vietnam is taking the higher value paper and only printing and forming it.  This illustrates why using a company from an upstream production step is a poor approximation of what the surrogate ratios likely should be for a company that purchases paper to produce paper products.

Based on the foregoing discussion, Suparma is not comparable to Go-Pak Vietnam and its integrated production experience is dissimilar to Go-Pak Vietnam's operations.  Commerce's policy requires that surrogate financial statements be selected for their specificity, with a preference for companies operating at a similar level of integration as the respondent.  Go-Pak Vietnam respectfully requests that the Court remand this issue for reconsideration.

### 3. <u>Substantial Record Evidence Demonstrates That Suparma Is Not a Producer of Comparable Merchandise</u>

Commerce's conclusion that "Suparma is a producer of laminated paper for holding, placing, and wrapping food as does a paper bowl or paper plate" is unsupported and contradicted by the substantial evidence on the record.  IDM at Comment 2, P.R. 227.

NON-CONFIDENTIAL VERSION

In the <u>Final Determination</u>, Commerce continued to find that Suparma was a producer of

comparable merchandise.  Commerce relied on Exhibit 5 of Petitioner's First SV Submission,

which states:

> In order to accommodate customers' needs, we are also equipped with varied
> range of converting machines such as off-cutting machines, rewinding machines,
> folding machines for tissue products, and laminating machines. These machines
> convert base papers produced from our paper machines into various sizes of
> finished products . . .

<u>Id.</u> at Comment 2, Footnote 62.  Commerce also cited Exhibit 2B of Go-Pak Vietnam's SV

Rebuttal Submission, which explains:

> To meet the customer's expectation, PT Suparma Tbk also equipped with range of
> converting machines such as Off Cutting Machines, Rewinding Machines, Tissue
> Product Folding Machines, and Laminating Machines. These machines convert
> the Base Paper produced from the paper machines into finished products in the
> form of Sheet or Reel form with varies size or dimensions . . . . In the Finishing,
> there are several stages of the process namely Rewinding, Cutting, Sorting and
> Wrapping . . . . While in the Laminating section, the process of adding value to
> the paper (Laminating), by providing a layer of LDPE on paper.

<u>Id.</u> at Comment 2, Footnote 62.

The exhibits cited by Commerce confirm that Suparma is engaged in paper

manufacturing, not packaging manufacturing.  They describe Suparma's operations as producing

finished paper in sheet or reel form and laminating paper with LDPE—activities that are part of

paper production and do not create products comparable to paper plates.  The evidence shows

only that Suparma has converting equipment such as rewinders, cutters, and laminators.

Exhibit 2B of Go-Pak Vietnam's Rebuttal SV Submission lists Suparma's products,

which include tissue, paper towel, laminated wrapping kraft paper, and carton paper.  <u>See</u> Go-

Pak Vietnam's Rebuttal SV Submission, at Exhibit 2B, P.R. 148.  This list, consistent with

Commerce's own citations, shows that Suparma manufactures paper products and laminates base

paper, but does not show that Suparma produces paper packaging products such as plates, cups,

or trays.  By treating intermediate paper finishing as equivalent to the production of packaging merchandise, Commerce blurred the distinction.  Converting operations do not make Suparma comparable to Go-Pak Vietnam, but even if they did the Suparma experience is still defined by the fact that its starting material is pulp, not paper.

In addition, the record demonstrates that Suparma is not a producer of comparable merchandise.  First, the record shows that Go-Pak Vietnam and Suparma operate in distinct industries, and therefore Suparma should not be considered a producer of comparable merchandise.  In Go-Pak Vietnam's Rebuttal SV Submission, Go-Pak Vietnam provided Exhibits 1A through 1E to demonstrate that Suparma operates in a different industry compared to Go-Pak Vietnam.  Exhibit 1A contains the Global Industry Classification Standard (GICS) Methodology.  See Go-Pak Vietnam's Rebuttal SV Submission, at Exhibit 1A, P.R. 146.  The Global Industry Classification Standard was developed by MSCI in 1999 and provides a universal approach to industry classification.  Id., page 4 of Exhibit 1A.  "Manufacturers of paper and cardboard containers and packaging" fall under the industry category "Containers & Packaging" (151030), specifically within the sub-industry "Paper & Plastic Packaging Products & Materials" (15103020).  Id., pages 6 and 21 of Exhibit 1A.  Conversely, "Manufacturers of all grades of paper" are classified under the industry category "Paper & Forest Products" (151050), specifically within the sub-industry "Paper Products" (15105020).  Id., pages 6 and 22 of Exhibit 1A.  Furthermore, Exhibits 1D and 1E of Go-Pak Vietnam's Rebuttal SV Submission include company profiles for Suparma sourced from investing.com and marketscreener.com.  See Id., Exhibits 1D to 1E.  These profiles show that Suparma is categorized under "Paper and Forest Products" industry, in alignment with the GICS classifications.

To further highlight this distinction, Go-Pak Vietnam submitted a SGS certificate issued by Société Générale de Surveillance, certifying that Go-Pak Vietnam meets the requirements of the "Global Standard for Packing Materials." See Letter from Trade Pacific PLLC, "Final Comments on Surrogate Values," (July 23, 2024) ("Go-Pak Vietnam's Final SV Submission"), at Exhibit FSV-1, P.R. 166. This certification underscores that Go-Pak Vietnam operates in the packaging industry, whereas Suparma operates in the paper manufacturing industry. Accordingly, Suparma cannot be considered a producer of comparable merchandise.

As instructed in the Policy Bulletin, "comparable merchandise should be identified **narrowly**, **on the basis of a comparison of the major inputs**." Policy Bulletin 04.1 at 3 (emphasis added). The comparison of the major inputs and the end products establishes that Suparma is not a producer of merchandise comparable to that of Go-Pak Vietnam.

Section 706(2) of the APA provides that a reviewing court "shall hold unlawful and set aside" agency actions that are unsupported by substantial evidence, contrary to law, or otherwise arbitrary and capricious. 5 U.S.C. § 706(2). Substantial evidence requires "more than a mere scintilla" and must be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," while also accounting for evidence that detracts from the agency's position. Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 619–20 (1966); Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951).

The record contains overwhelming evidence that Suparma produces paper and tissue products, not containers and packaging products like Go-Pak Vietnam. Under Burlington Truck Lines, Inc. v. United States, Commerce failed to provide a rational connection between this evidence and its conclusion that Suparma produces comparable merchandise. By

mischaracterizing Suparma's production and disregarding evidence to the contrary, Commerce relied on facts that do not support its determination.

Accordingly, Commerce's reliance on Suparma's financial statements is unsupported by substantial evidence. Go-Pak Vietnam respectfully requests that the Court remand this issue for reconsideration.

**B. Commerce's Determination to Use a Simple Average of the Average Unit Values from Two Different Harmonized Tariff Schedule Subheadings (i.e., 4810.32.90 and 4810.92.90) to Value Go-Pak Vietnam's Paper Input Was Not Supported by Substantial Evidence and Was Not in Accordance with Law**

**1.  Factual Background**

In its Rebuttal SV Submission, Go-Pak Vietnam submitted excerpts from the Vietnamese and Indonesian tariff schedules describing the scope of HTS 4810.92.90 and HTS 4810.32.90. See Go-Pak Vietnam's Rebuttal SV Submission, at Exhibits 3E and 3F, P.R. 154.

In its Supp3 Response, Go-Pak Vietnam submitted purchase documentation, including its import declaration, which identifies HTS 4810.92.90 as the tariff classification used for its paper input. See Go-Pak Vietnam's Supp3 Response, at SD3-5 and Exhibit SD3-3(a), C.R. 96, P.R. 169.

In the Preliminary Determination wherein Commerce calculated a zero percent margin for Go-Pak Vietnam, Commerce determined that Go-Pak Vietnam's paper input was appropriately classified under HTS 4810.92.90, rather than under HTS 4810.32.90 as proposed by Petitioner. See Certain Paper Plates From the Socialist Republic of Vietnam: Preliminary Affirmative Determination of Sales at Less Than Fair Value, Preliminary Affirmative Determination of Critical Circumstances, in Part, Postponement of Final Determination, and Extension of Provisional Measures, 89 Fed. Reg. 72375 (September 5, 2024) ("Preliminary Determination"), P.R. 198, and accompanying Investigation of Sales at Less Than Fair Value of

Certain Paper Plates from the Socialist Republic of Vietnam: Preliminary Surrogate Values

Memorandum (August 29, 2024) ("Prelim SV Memo"), at 3–4, P.R. 188.   Commerce noted that

HTS 4810.32.90 covers kraft paper "with more than 95 percent of chemical pulp," while the

record demonstrated that Go-Pak Vietnam's paper input (i.e., GC2 hi-bulk paper, a kaolin-coated

multi-ply paperboard weighing more than 150 grams per square meter ) was composed of only

25–35 percent chemical pulp and therefore "cannot be categorized under HTS 4810.32.90."  Id.

Commerce further emphasized that the input is multilayered ("multi-ply") and that purchase

documentation showed the input was imported into Vietnam under HTS 4810.92.90. Id.  at 4.

Accordingly, Commerce selected HTS 4810.92.90, which covers "paper and paperboards that

are not covered by HTS subheadings that cover papers and paperboards with specialized

specifications, e.g., kraft papers in HTS 4810.32.90."  Id.  at 4.

　　　At verification, Commerce "observed that the paper type (*i.e.*, multi-layered "GC2") . . . .

was accurately reported."  See Antidumping Duty Investigation of Certain Paper Plates from the

Socialist Republic of Vietnam: Factors of Production Verification Report (October 15, 2024)

("Verification Report"), at 12 (citing Exhibit FVE-11B), C.R. 177, P.R. 209.

　　　However, in the Final Determination, Commerce reversed course and determined that

Go-Pak Vietnam's paper input should be valued using a simple average of the average unit

values ("AUVs") from HS subheadings 4810.32.90 and 4810.92.90, rather than selecting a single

AUV (i.e., 4810.92.90).  IDM at Comment 1, P.R. 227.  Commerce explained that "a simple

average of the AUVs constitutes the best available information to value Go-Pak Vietnam's paper

input and, thus justifies a departure from {its} normal practice of selecting one AUV for each

input."  Id.  Commerce reasoned that basis weight is a critical product characteristic in the

manufacture and sale of paper plates, and HS 4810.32.90 represents products weighing more

than 150 grams/meter², which it deemed "a critical consideration in this investigation." Id.

Commerce further found that using only HS 4810.92.90 or HS 4810.32.90 "will not adequately

capture all aspects of Go-Pak Vietnam's input," because HS 4810.32.90, while containing some

physical characteristics inconsistent with Go-Pak's input, nevertheless captured the "critical

characteristic of base weight not covered by HS 4810.92.90." Id.  Based on these findings,

Commerce "simple-averaged the AUVs from HS subheadings 4810.32.90 and 4810.92.90 to

value the paper input reported by Go-Pak Vietnam." Id.

**2. <u>Substantial Evidence on the Record Supported Go-Pak Vietnam's Paper Does Not Possess the Characteristics that Define the Classification Under HTS 4810.32.90</u>**

In the <u>Final Determination</u>, Commerce calculated the surrogate value for Go-Pak

Vietnam's paper input by averaging the AUVs from HTS 4810.32.90 and 4810.92.90, instead of

relying solely on HTS 4810.92.90.  <u>See</u> IDM at Comment 1, P.R. 227.  Commerce reasoned that

"a simple average of the AUVs constitutes the best available information to value Go-Pak

Vietnam's paper input and, thus justifies a departure from {its} normal practice of selecting one

AUV for each input." Id.

However, the record establishes that the paper is properly classified under HTS

4810.92.90 alone.  Including HTS 4810.32.90 is inconsistent with the technical characteristics of

the input and with Commerce's obligation to use the "best available information." <u>See</u> 19 U.S.C.

§ 1677b(c)(1).  Averaging two HTS categories, when one clearly misrepresents the input

produces an inaccurate valuation.  By doing so, Commerce departed from its established practice

with inadequate justification.

The record confirmed that Go-Pak Vietnam's paper meets the definition of HTS

4810.92.90 and does not satisfy the requirements of HTS 4810.32.90.  Indeed, HTS 4810.92.90

is the classification Go-Pak Vietnam itself uses when importing the paper into Vietnam.  In its

Ct. No. 25-00070                                    **NON-CONFIDENTIAL VERSION**

Supp3 Response, Go-Pak Vietnam submitted purchase documents, including an import

declaration, showing that the paper was classified under HTS 4810.92.90.  See Go-Pak

Vietnam's Supp3 Response, at SD3-5 and Exhibit SD3-3(a), C.R. 96, P.R. 169.  On page 3 of the

import declaration, the HTS code recorded for the paper is 4810.92.90.  Id.  The excerpt from

page 3 of Exhibit SD3-3(a) states:

$$\Big[ \qquad\qquad\qquad\qquad\qquad\qquad\qquad\qquad\qquad\qquad \Big]$$

Moreover, the HTS classification descriptions for Vietnam and Indonesia (i.e., surrogate

country) are identical. Go-Pak Vietnam submitted excerpts from both tariff schedules, showing

that in each country HTS 4810.92.90 covers:

> **4810** - Paper and paperboard, coated on one or both sides with kaolin (China clay) or other
> inorganic substances, with or without a binder, and with no other coating, whether or not
> surface-coloured, surface-decorated or printed, in rolls or rectangular (including square)
> sheets, of any size.
> **4810 -- 92** Multi-ply:
> **4810.92--90** Other than "in rolls of not more than 150 mm in width…"

Go-Pak Vietnam's Rebuttal SV Submission, at Exhibits 3E and 3F, P.R. 154.

Thus, the HTS classifications for HTS 4810.92.90 are identical in both Vietnam and

Indonesia and Go-Pak Vietnam used HTS classification 4810.92.90 when declaring the imports

to Vietnam Customs.

The record further corroborates that 4810.92.90 is the appropriate classification. HTS

4810.92.90 covers "multi-ply" paper or paperboard that is in rolls that are greater than 150 mm

in width.  Id.  Multiple record sources confirm that Go-Pak Vietnam's paper input is multi-ply

and in rolls greater than 150 mm.  See Go-Pak Vietnam's Supp3 Response, Exhibit SD3-3(a),

C.R. 96, P.R. 169.  The accompanying invoice and packing list also establish that the rolls

exceed 150 mm in width. See id. (noting the dimensions including [

]). In addition, product specifications from Go-Pak

Vietnam's supplier describe the paper as "three layers in structure," further confirming its multi-

ply nature. Id., at Exhibit SD3-3(b). Go-Pak Vietnam also provided the Technical Information

sheet and supplier declaration for [                                                    ] showing that the

paperboard is multi-layer and composed of [

]. Id., at Exhibit SD3-3(c) and SD3-3(d).

Collectively, these documents demonstrate that HTS 4810.92.90 accurately describes Go-

Pak Vietnam's paper input, whereas HTS 4810.32.90—used by Commerce in the Final

Determination—does not. HTS 4810.32.90 covers:

> **4810** - Paper and paperboard, coated on one or both sides with kaolin (China clay) or other inorganic substances, with or without a binder, and with no other coating, whether or not surface-coloured, surface-decorated or printed, in rolls or rectangular (including square) sheets, of any size.
> **4810 -- 32** Bleached uniformly throughout the mass and **of which more than 95 percent by weight of the total fiber content consists of wood fibers obtained by a chemical process**, and weighing more than 150 g/m$^2$:
> > **4810.32--90** Other than "in rolls of not more than 150 mm in width…"

Go-Pak Vietnam's Rebuttal SV Submission, at Exhibits 3E and 3F, P.R. 154.

The product specification information for Go-Pak Vietnam's paper demonstrates that it is

**not** "bleached uniformly throughout" because Go-Pak Vietnam's paper is multi-layer, so it

cannot be uniformly bleached. Furthermore, Go-Pak Vietnam's paper is [

] and thus **not** "more than 95 percent by weight of the total fiber content consists of wood

fibers obtained by a chemical process." Go-Pak Vietnam's Supp3 Response, Exhibit SD3-3(d),

C.R. 96, P.R. 169. Thus, the defining characteristics of HTS 4810.32.90 are wholly inconsistent

with Go-Pak Vietnam's input.

**NON-CONFIDENTIAL VERSION**

Commerce correctly valued Go-Pak Vietnam's paper in the <u>Preliminary Determination</u> and subsequently verified the accuracy of that decision. At verification, Commerce "observed that the paper type (i.e., multi-layered "GC2") . . . . was accurately reported." <u>See</u> Verification Report, at 12 (citing Exhibit FVE-11B), C.R. 177, P.R. 209.

Commerce reasoned that HTS 4810.32.90, though inconsistent with the technical and physical characteristics of Go-Pak Vietnam's paper, nevertheless captured the critical characteristic of basis weight not covered by HTS 4810.92.90. <u>IDM</u> at Comment 1, P.R. 227. This rationale is unpersuasive. The record shows that HTS 4810.92.90 fully encompasses Go-Pak Vietnam's paper input, including basis weight. Nothing indicates that HTS 4810.92.90 excludes paper of any particular weight; on the contrary, the absence of a weight limitation confirms that the provision is broad enough to cover all relevant basis weights, including Go-Pak Vietnam's input.

When selecting surrogate values, Commerce's practice is to use surrogate values which are: (1) broad market averages; (2) product-specific; (3) tax-exclusive, non-export average values; and (4) contemporaneous with the POI. <u>PDM</u>, at 20 (citing <u>Notice of Preliminary Determination of Sales at Less Than Fair Value, Negative Preliminary Determination of Critical Circumstances and Postponement of Final Determination: Certain Frozen and Canned Warmwater Shrimp from the Socialist Republic of Vietnam</u>, 69 Fed. Reg. 42672, 42682 (July 16, 2004) (<u>Shrimp from Vietnam</u>), <u>unchanged</u> in <u>Final Determination of Sales at Less Than Fair Value: Certain Frozen and Canned Warmwater Shrimp from the Socialist Republic of Vietnam</u>, 69 Fed. Reg. 71005 (December 8, 2004)). The HTS classification 4810.92.90 used by Commerce is "product-specific," whereas HTS 4810.32.90, which Commerce also included in the <u>Final Determination</u> by averaging with 4810.92.90, is not "product-specific," as

demonstrated above.  The HTS classification 4810.92.90 Commerce used in the <u>Preliminary</u>

<u>Determination</u> covers the basis weight of paper used by Commerce.  That a different HTS

classification, covering paper **that is not specific** to Go-Pak Vietnam's paper, includes a

narrower range of basis weight coverage is irrelevant and Commerce has previously rejected

similar arguments. <u>Certain Crystalline Silicon Photovoltaic Products From the People's Republic</u>

<u>of China: Final Results of Antidumping Duty Administrative Review and Final Determination of</u>

<u>No Shipments; 2014–2016</u>, 82 Fed. Reg. 32170 (July 12, 2017), accompanying IDM, at

Comment 10 (stating that "{w}hile the description for HTS category 7007.19.90000 does not

specify thickness, unlike HTS category 7005.29.90001, this fact does not suggest that HTS

category 7007.19.90000 does not cover the glass thickness used by Trina.  Rather, the lack of

specificity regarding thickness in HTS category 7007.19.90000 indicates that this HTS category

covers all thickness levels including the thickness of Trina's module glass").

     Under <u>Asociación Colombiana de Exportadores de Flores v. United States</u>, when

Commerce departs from its prior practice, it must provide a reasoned explanation supported by

substantial evidence and consistent with law.  22 CIT 173, 184–85, 6 F. Supp. 2d 865, 879–80

(1998).  Here, Commerce failed to provide such an explanation or point to record evidence

justifying its departure from prior practice.

     Commerce's established practice is to average HTS categories for a single factor of

production only when the reported factor of production falls within multiple HTS classifications.

In <u>PET Film from China</u>, Commerce averaged two HTS categories together but only because the

"information on the record supports a finding that both HTS subheadings may be equally

applicable to Respondents' inputs." <u>Polyethylene Terephthalate Film, Sheet, and Strip from the</u>

<u>People's Republic of China:  Final Results of the First Antidumping Administrative Review</u>, 76

Fed. Reg. 9753 (February 22, 2011), and accompanying IDM (February 11, 2011), at 14 ("PET Film from China IDM").   In Multilayered Wood Flooring from China, Commerce averaged two HTS classifications for fiberboard after finding that there was "no record information on the percentage of fiberboard at each density" and thus multiple HTS categories covered respondents' factor of production. Multilayered Wood Flooring from the People's Republic of China:  Final Determination of Sales at Less Than Fair Value, 76 Fed. Reg. 64,318 (October 18, 2011), and accompanying IDM (October 11, 2011), at Comment 20 ("Multilayered Wood Flooring from China").  In Non-Refillable Steel Cylinders from China, Commerce simple averaged two HTS categories covering different thicknesses of the steel because "the record does not contain information which provides a percentage breakdown of constituent sizes" and thus both classifications applied to the factor of production.  Non-Refillable Steel Cylinders from the People's Republic of China:  Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2020-2022, 88 Fed. Reg. 85,217 (December 7, 2023), and accompanying IDM (November 30, 2023), at Comment 3 ("Non-Refillable Steel Cylinders from China").  In Steel Nails from China, Commerce averaged multiple HTS categories because "these HTS categories cover the carbon content range reported by the respondents for their respective low-carbon steel wire rod" and thus the factor of production overlapped multiple HTS numbers.  Certain Steel Nails from the People's Republic of China: Final Results of Third Antidumping Duty Administrative Review; 2010-2011, 78 Fed. Reg. 166,51 (March 18, 2013), and accompanying IDM (March 5, 2013), at 19 ("Steel Nails from China").

In each of these instances the factor of production reported by the respondent overlapped with multiple HTS classifications and Commerce reasonably averaged the HTS-based average unit values together to apply to that factor of production.  The same is not true here.  Go-Pak

**NON-CONFIDENTIAL VERSION**

Vietnam's paper is properly classified in only one HTS classification (i.e., HTS 4810.92.90) and thus none of those cases support distortion of the surrogate value for Go-Pak Vietnam's paper valuation by including an average unit value for a classification (i.e., HTS 4810.32.90) that does not apply to Go-Pak Vietnam's paper input.

Accordingly, under <u>Asociación Colombiana de Exportadores de Flores v. United States</u>, Commerce's reliance on both HTS 4810.92.90 and 4810.32.90 departs from its practice without adequate explanation. Including a non-applicable HTS number distorts the surrogate value and contravenes the statutory requirement to rely on the "best available information." <u>See</u> 19 U.S.C. § 1677b(c)(1). Therefore, Commerce's determination is not supported by substantial evidence. For all these reasons, Go-Pak Vietnam requests that the Court remand this issue to Commerce with instructions to revalue the paper input using the appropriate HTS subheading 4810.92.90.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant its Motion for Judgment on the Agency Record and remand this case to Commerce with instructions consistent with the points set forth in this Memorandum.

Respectfully submitted,

/s/ Jonathan M. Freed
Jonathan M. Freed
Aqmar Rahman
Didie Muller

**TRADE PACIFIC PLLC**
700 Pennsylvania Avenue, SE, Suite 500
Washington, D.C.  20003
(202) 223-3760

Counsel to Plaintiff Go-Pak Vietnam

Dated:  August 28, 2025