# UNITED STATES COURT OF INTERNATIONAL TRADE

## BEFORE:  THE HONORABLE RICHARD K. EATON, SENIOR JUDGE

_____
|                                               )
| GO-PAK PAPER PRODUCTS VIETNAM CO.,            )
| LTD.,                                          )
|                                               )
|                   Plaintiffs,                  )
|                                               )
| v.                                             )          Court No. 25-00070
|                                               )
| UNITED STATES,                                 )
|                                               )
|                   Defendant,                   )
|                                               )
| and                                            )
|                                               )
| AMERICAN PAPER PLATE COALITION,                )
|                                               )
|                   Defendant-Intervenor.        )
_____)

### ORDER

Upon consideration of the plaintiff's Rule 56.2 motion for judgment on the agency record, defendant's opposition, and all other pertinent papers, it is hereby

ORDERED that the plaintiff's Rule 56.2 motion for judgment on the agency record is denied; and it is further

ORDERED that judgment shall issue for the United States.


Dated: _____                    _____ _____ _____
          New York, New York                                    JUDGE

## UNITED STATES COURT OF INTERNATIONAL TRADE

### BEFORE:  THE HONORABLE RICHARD K. EATON, SENIOR JUDGE

_____

|  |  |  |
|---|---|---|
| GO-PAK PAPER PRODUCTS VIETNAM CO., LTD., | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Court No. 25-00070 |
| UNITED STATES, | ) ) | **PUBLIC VERSION** **BPI omitted on pages 6, 7, 8** |
| Defendant, | ) ) ) | |
| and | ) ) | |
| AMERICAN PAPER PLATE COALITION, | ) ) | |
| Defendant-Intervenor. | ) ) | |

_____)

### DEFENDANT'S RESPONSE TO PLANTIFF'S
### RULE 56.2 MOTION FOR JUDGMENT UPON THE AGENCY RECORD

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

CLAUDIA BURKE
Deputy Director

OF COUNSEL
Brien Stonebreaker
Attorney
U.S. Department of Commerce
Office of the Chief Counsel for
Trade Enforcement Compliance

COLLIN T. MATHIAS
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
P.O. Box 480, Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 307-0315
Email: Collin.T.Mathias@usdoj.gov

December 19, 2025

*Attorneys for Defendant United States*

## <u>TABLE OF CONTENTS</u>

<u>PAGE</u>

DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR JUDGMENT UPON
AGENCY RECORD ................................................................................................. 1

STATEMENT PURSUANT TO RULE 56.2 .............................................................. 2

    I.    Administrative Determination Under Review ...................................... 2

    II.    Issues Presented For Review ................................................................ 2

STATEMENT OF FACTS ........................................................................................ 2

    I.    Commerce's Antidumping Investigation ............................................ 2

    II.    Surrogate Country Selection and Surrogate Values ............................ 4

    III.    Commerce's Final Determination ........................................................ 7

SUMMARY OF THE ARGUMENT ......................................................................... 9

ARGUMENT ........................................................................................................... 9

    I.    Standard of Review ............................................................................. 9

    II.    Statutory and Regulatory Framework For Surrogate Value Selections ............... 10

    III.    Commerce's Determination To Use The Financial Statements Of Suparma Is
        Supported By Substantial Evidence And Otherwise In Accordance With Law ... 12

        A.  Commerce Did Not Unreasonably Or Unlawfully Ignore Whether Suparma
            Was An Integrated Producer ........................................................ 13

        B.  Commerce's Reasonable Determination That Suparma Is A Producer Of
            Comparable Merchandise Is Supported By Record Evidence And In
            Accordance With Law .................................................................. 16

    IV.    Commerce's Determination To Simple Average The Average Unit Values Of Two
        HTS Subheadings To Account For Production Factors Is Supported By
        Substantial Evidence And In Accordance With Law ......................... 18

        CONCLUSION ........................................................................................ 23

## <u>TABLE OF AUTHORITIES</u>

Page(s)

**Cases**

*Ad Hoc Shrimp Trade Action Comm. v. United States,*
 70 F. Supp. 3d 1328 (Ct. Int'l Trade 2015)........................................................................ 15

*Allegheny Ludlum Corp. v. United States,*
 346 F.3d 1368 (Fed. Cir. 2003) ......................................................................................... 21

*Altx, Inc. v. United States,*
 167 F. Supp. 2d 1353 (Ct. Int'l Trade 2001)..................................................................... 14

*Amanda Foods (Vietnam) Ltd. v. United States,*
 647 F. Supp. 2d 1368 (Ct. Int'l Trade 2009)..................................................................... 19

*An Giang Fisheries Imp. & Exp. Joint Stock Co. v. United States,*
 287 F. Supp. 3d 1361 (Ct. Int'l Trade 2018)..................................................................... 10

*Atchison, Tpoeka & Santa Fe Ry. Co. v. Wichita Bd. Of Trade,*
 412 U.S. 800 (1973)........................................................................................................... 21

*Coalition for the Preservation of Am. Brake Drum and Rotor Aftermarket Mfr. v. United States,*
 44 F. Supp. 2d 229 (Ct. Int'l Trade 1999) ......................................................................... 11

*Consol. Edison Co. v. NLRB,*
 305 U.S. 197 (1938)........................................................................................................... 10

*Consolo v. Fed. Mar. Comm'n,*
 383 U.S. 607 (1966)........................................................................................................... 10

*Fine Furniture (Shaghai) Limited v. United States,*
 353 F. Supp. 3d 1323 (Ct. Int'l Trade 2018)..................................................................... 23

*Fine Furniture (Shanghai) Limited v. United States,*
 182 F. Supp. 3d 1350 (Ct. Int'l Trade 2016)..................................................................... 15

*Guangdong Chems. Imp. & Exp. Corp. v. United States,*
 460 F. Supp. 2d 1365 (Ct. Int'l Trade 2006).............................................................. 10, 16

*Fujitsu Gen. Ltd. v. United States,*
 88 F.3d 1034 (Fed. Cir. 1996) ............................................................................................. 9

*Home Meridian Int'l, Inc. v. United States,*
 772 F.3d 1289 (Fed. Cir. 2014) ......................................................................................... 12

*Husteel Co., Ltd. v. United States,*
    98 F. Supp. 3d 1315 (Ct. Int'l Trade 2015) ........................................................ 14

*Jiaxing Bro. Fastener Co., Ltd. v. United States,*
    822 F.3d 1289 (Fed. Cir. 2016) ......................................................... 11, 12, 17

*Matsushita Elec. Indus. Co. v. United States,*
    750 F.2d 927 (Fed. Cir. 1984) ........................................................................ 10

*Nation Ford Chemical Co. v. United States,*
    166 F.3d 1373 (Fed. Cir. 1999) ....................................................... 10, 11, 16

*Pirelli Tyre Co., Ltd. v. United States,*
    128 F.4th 1265 (Fed. Cir. 2025) ...................................................................... 14

*Qingdao Sea-Line Trading Co v. United States,*
    36 C.I.T. 451 (2012) ...................................................................................... 12

*QVD Food Co. v. United States,*
    721 F. Supp. 2d 1311 (Ct. Int'l Trade 2010) .................................................. 12

*Sma Surfaces, Inc. v. United States,*
    658 F. Supp. 3d 1325 (Ct. Int'l Trade 2023) .................................................. 14

*Sigma Corp. v. U.S.,*
    117 F.3d 1401 (Fed. Cir. 1997) ...................................................................... 11

*United Steel & Fasteners, Inc. v. United States,*
    469 F. Supp. 3d 1390 (Ct. Int'l Trade 2020) .................................................. 19

*Universal Camera Corp. v. NLRB,*
    340 U.S. 474 (1951) ........................................................................................ 10

*Xi'an Metals & Mins. Imp. & Exp. Co. v. United States,*
    50 F.4th 98 (Fed. Cir. 2022) ............................................................................ 11

*Zhejiang DunAn Hetian Metal Co. v. United States,*
    652 F.3d 1333 (Fed. Cir. 2011) ...................................................................... 19

**Statutes**

19 U.S.C. § 1677b ..................................................................................... 10, 12, 16, 17

19 U.S.C. § 1677f(i) ............................................................................................... 14

PUBLIC VERSION

**Regulations**

19 C.F.R. § 351.408(c)(3) ..................................................................................... 12

## UNITED STATES COURT OF INTERNATIONAL TRADE

### BEFORE:  THE HONORABLE RICHARD K. EATON, SENIOR JUDGE

_____
)
GO-PAK PAPER PRODUCTS VIETNAM CO., )
LTD., )
)
             Plaintiffs, )
)
    v. )       Court No. 25-00070
) **PUBLIC VERSION**
UNITED STATES, )   **BPI omitted on pages 6, 7, 8**
)
             Defendant, )
)
    and )
)
AMERICAN PAPER PLATE COALITION, )
)
             Defendant-Intervenor. )
_____)

## DEFENDANT'S RESPONSE TO PLAINTIFF'S
## MOTION FOR JUDGMENT ON THE AGENCY RECORD

Defendant, United States, respectfully responds in opposition to the motion for judgment on the agency record filed by Go-Pak Paper Products Vietnam Co., Ltd. (Go-Pak Vietnam), challenging the Department of Commerce's (Commerce) final determination of the antidumping (AD) investigation of certain paper plates from Vietnam.  *See* ECF No. 28 (Go-Pak Br.). Commerce's determination to use the PT Suparma Tbk (Suparma) financial statements in its calculation of Go-Pak Vietnam's surrogate values and to use a simple average of Harmonized Tariff Schedule (HTS) subheading 4810.32.90 and 4810.92.90 is supported by substantial evidence and otherwise in accordance with law.  The Court therefore should deny Go-Pak Vietnam's motion and enter judgment for the United States.

## STATEMENT PURSUANT TO RULE 56.2

### I.    Administrative Determination Under Review

Go-Pak Vietnam challenges certain aspects of Commerce's final determination in the AD investigation of certain paper plates from Vietnam. *Certain Paper Plates From the Socialist Republic of Vietnam* (Vietnam), 90 Fed. Reg. 8,265 (Dep't of Commerce Jan. 28, 2025) (final affirmative determination of sales at less than fair value and final affirmative determination of critical circumstances, in part) (P.R. 236)[1] (final determination), and accompanying Issues and Decision Memorandum (IDM) (P.R. 227).

### II.    Issues Presented For Review

1.    Whether Commerce's determination to include the Suparma financial statement in its calculation of surrogate values for Go-Pak is supported by substantial evidence and otherwise in accordance with law.

2.    Whether Commerce's determination to apply a simple average of the average unit values imported under HTS subheading 4810.32.90 and 4810.92.90 is supported by substantial evidence and otherwise in accordance with law.

## STATEMENT OF FACTS

### I.    Commerce's Antidumping Investigation

On February 14, 2024, Commerce initiated a less-than-fair-value antidumping investigation of certain paper plates from Socialist Republic of Vietnam. *See* Initiation Notice (P.R. 41). In that notice, Commerce invited parties to comment on the appropriate physical characteristics of paper plates to "identify the key physical characteristics of the subject

---

[1] The record is identified as "P.R." for Public Documents and "C.R." for Business Proprietary Documents.

merchandise in order to report the relevant factors of production {} or cost of production {} accurately, as well as to develop appropriate product comparison criteria." *Id*. at 4-5. Commerce explained that product comparison criteria are based "on meaningful commercial differences among products" and that physical characteristics are ordered from most to least important. *Id*. As a result, Commerce solicited comments on the order in which the physical characteristics should be used in matching products. *Id*.

In its comments, Go-Pak Vietnam proposed the following hierarchy of product characteristics: (1) paper type; (2) paper basis weight; (3) length; (4) width; (5) depth; (6) shape of plate; (7) coating; and (8) color. Go-Pak Product Characteristics Comments at 2 (P.R. 48). It explained that paper basis weight should be second because,

> Higher paper weights require more raw materials or more expensive materials during production, leading to higher manufacturing costs. Conversely, paper plates produced from lower paper weights should have lower costs. Consequently, the prices for paper plates with heavier weights are priced higher than paper plates with lower paper weights.

*See id*. at 3. Conversely, the petitioner, the American Paper Plate Coalition (Coalition) suggested the following order: (1) package count; (2) plate surface area; (3) nominal caliper (thickness); (4) basis weight (which measures density as opposed to thickness); (5) type of paper fiber; (6) printed area; (7) number of printed colors; (8) plate coating; (9) plate shape; (10) color of paper; (11) number of plate sections; (12) other surface treatment. *See* Coalition Product Characteristic Comments at 2-6 (P.R. 49). In rebuttal, the Coalition explained that caliper and basis weight would "capture any commercially meaningful difference in paper types, given that different paper types of the same caliper can have different basis weights." *See* Coalition Product Characteristic Rebuttal Comments at 3 (P.R. 50). Go-Pak Vietnam did not submit rebuttal comments. After considering the parties' submissions, Commerce adopted the Coalition's

suggested hierarchy and product characteristics, with the exception of adding "paper type" behind "type of paper fiber." *See* Product Characteristics Memorandum at 1 (P.R. 88). Notably, basis weight remained high in the hierarchy as the fourth most important characteristic, behind only package count, surface area, and caliper. *See id*.

## II.    Surrogate Country Selection and Surrogate Values

On May 6, 2024, Commerce invited interested parties to submit comments and factual information regarding surrogate country selection and surrogate value data. *See* Surrogate Schedule Memorandum, (P.R. 95). Go-Pak Vietnam and the Coalition suggested Indonesia as the surrogate value country, which Commerce selected in the preliminary determination. *See Certain Paper Plates From The Socialist Republic of Vietnam: Preliminary Affirmative Determination of Sales at Less Than Fair Value, Preliminary Affirmative Determination of Critical Circumstances, in Part, Postponement of Final Determination, and Extension of Provisional Measures*, 89 Fed. Reg. 72,375 (Sept. 5, 2024) (preliminary determination) (P.R. 198), and accompanying preliminary decision memorandum (PDM) at 6 (P.R. 187).

For the financial ratios, the Coalition submitted the 2023 fiscal year financial statement of an Indonesian producer of comparable merchandise, Suparma, "which was used both in the initiation phase of this investigation, as well as in the recent investigation involving file folders from Vietnam." *See* Coalition Surrogate Value Submission Narrative at 3 (P.R. 119); Coalition Surrogate Value Submission at Exhibit 5 (P.R. 123). Go-Pak also submitted surrogate value comments and placed the 2023 fiscal year financial statement of an Indonesian producer of comparable merchandise, PT Alkindo Naratama Tbk (Alkindo), as well as a surrogate value memorandum from an investigation of paper shopping bags from Vietnam which also relied on

Alkindo's data.  *See* Go-Pak's Comments on Surrogate Values at 2, Exhibit SV-10, Exhibit SV-11, Exhibit SV-12 (P.R. 125, 126).

In the preliminary determination, Commerce relied on the audited 2023 financial statements of Suparma and Alkindo, finding that both companies produced comparable merchandise, that the statements were contemporaneous with the period of investigation, and were the "best available information to calculate surrogate financial ratios."  PDM at 23-24.

The parties also proposed surrogate values to value Go-Pak Vietnam's paper inputs, disagreeing over the appropriate HTS category that should be applied.  Generally, in order to calculate surrogate values for materials, Commerce uses import data, or average unit values (AUV) from the surrogate country based on a chosen HTS subheading.  Preliminary Surrogate Values Memorandum at 2 (P.R. 188).  The Coalition proposed the Indonesian import data for HTS 4810.32.90 which covers: "Kraft Paper And Paperboard, Bleached 0th In Rolls<150 Mm Width/Sheets No Side > 360 Mm Unfolding State Weighing > 150G/M$^2$."  Coalition Surrogate Value Submission at Exhibit 1 (P.R. 119).  Meanwhile, Go-Pak Vietnam proposed using the Indonesian import data for HTS 4810.92.90 which covers:

> 4810 - Paper and paperboard, coated on one or both sides with kaolin (China clay) or other inorganic substances, with or without a binder, and with no other coating, whether or not surface-coloured, surface-decorated or printed, in rolls or rectangular (including square) sheets, of any size.
> 4810 -- 92 Multi-ply:
>> 4810.92--90 Other than "in rolls of not more than 150 mm in width…"

Go-Pak's Rebuttal Surrogate Value Submission at Exhibits 3E, 3F (P.R. 154).  The Coalition argued in its pre-preliminary comments that the Indonesia import data submitted for HTS category 4810.32.90 should be used to value the paper input because only this category "specifically identifies the higher basis weight material used in the production of subject

merchandise (greater than 150g/m²)" [                    ] of Go-Pak Vietnam's U.S. sales were coded with a basis weight of [                    ]. Coalition's Pre-Prelim Comments at 7 (P.R. 167, C.R. 93). Go-Pak Vietnam's pre-preliminary comments argued that its paper "possesses the characteristics that define the classification under 4810.92.90 and does not possess the characteristics of {HTS code 4810.92.90}" because it is not "bleached uniformly throughout" and is [                    ] rather than 95 percent of wood fibers as the HTS classification specifies. Go-Pak's Pre-Prelim Comments at 4 (P.R. 170, C.R. 100). Further, it asserted that HTS 4810.92.90 was what it used to import its paper purchases. *Id.* at 3.

As Commerce acknowledged in the PDM, its general practice is to select surrogate values that are "(1) broad market averages; (2) product-specific; (3) tax-exclusive, non-export average values; and (4) contemporaneous with, or closed in time to, the POI." PDM at 20 (citing *Notice of Preliminary Determination of Sales at Less Than Fair Value, Negative Preliminary Determination of Critical Circumstances and Postponement of Final Determination: Certain Frozen and Canned Warmwater Shrimp from the Socialist Republic of Vietnam*, 69 Fed. Reg. 42672, 42682 (July 16, 2004) (Shrimp from Vietnam), unchanged in *Final Determination of Sales at Less Than Fair Value: Certain Frozen and Canned Warmwater Shrimp from the Socialist Republic of Vietnam*, 69 Fed. Reg. 71005 (Dec. 8, 2004)). Commerce preliminarily selected the AUVs under HTS subheading 4810.92.90 to value Go-Pak's paper inputs. Preliminary Surrogate Values Memorandum at 3 (P.R. 188).

After the preliminary determination, Commerce performed verification of Go-Pak Vietnam. During verification, Commerce ensured that Go-Pak accurately reported material inputs, including paper. *See* Commerce's Factors of Production Verification Report at 11-12 (C.R. 177). Go-Pak provided sample purchase documents for paper inputs, which demonstrated

"[                    ] paper base weight (BWEIGHTU) reported to have been used for the production of paper plates, *i.e.*, [                              ] g/m². *Id.* at 12.

## III.    Commerce's Final Determination

In the final determination, Commerce continued to rely on both of the financial ratios derived from Alkindo's and Suparma's financial statements, finding that both satisfied Commerce's criteria for use as producers of comparable merchandise. IDM at 13. Commerce explained that it continued to find Suparma is a producer of comparable merchandise as a "producer of laminated paper for holding, placing, and wrapping food as does a paper bowl or paper plate." *Id.* at 15. Further, because Suparma produces paper products "used for packaging cooked, moist food," Commerce determined that the categorization of Alkindo in the container and packaging sector and Suparma in the paper and forest products sector is "a difference without distinction for purposes of selecting financial statements of Indonesian producers of merchandise comparable to paper plates." *Id.* Further, Commerce determined that record evidence indicates Suparma is not "only a producer of paper from raw materials used in the production of papers," but also "processes paper inputs into other paper products" and is thus "capable of processing paper inputs into laminated paper products used for holding, placing, and wrapping cooked, moist food." *Id.* Thus, "consistent with {its} practice," Commerce continued to relying on two qualifying financial statements. *Id.*

Further, Commerce revised its valuation of Go-Pak Vietnam's paper input. IDM at 9-10. Instead of relying on the AUVs of a single HTS subheading as Commerce did preliminarily, Commerce determined that the best available information on the record was a simple average of the AUVs under HTS subheadings 4810.32.90 and 4810.92.90. *Id.* Commerce explained that neither HTS subheading adequately captured all production characteristics of Go-Pak Vietnam's

paper inputs, so Commerce departed from its normal practice of selecting a single HTS subheading's AUV to mitigate the problem. *Id.*

Specifically, Commerce explained that subheading 4810.92.90 "clearly covers the paper input used in the production of paper plates" because the subheading specified "paper and paperboard and multi-ply." *Id.* at 9 (quotation marks omitted). However, Commerce also stated that subheading 4810.92.90 was silent on "paper base weight," which subheading 4810.32.90 covered. *Id.* at 9-10. Commerce noted "that basis weight is critical component in the manufacture and sale of paper plates," as evidenced by the fact paper base weight was the fourth production characteristic. *Id.* at 10 (citing Product Characteristics Memorandum at 2 (P.R. 88)). As such, Commerce found that using a single HTS subheading would "not adequately capture all aspects of Go-Pak Vietnam's input." *Id.* Although neither subheading was entirely consistent with the physical characteristics, a simple average of both captured all critical characteristics. *Id.* Thus, Commerce concluded that a simple average of the AUVs from subheadings 4810.32.90 and 4810.92.90 best valued Go-Pak's paper input, because the these two HTS subheadings captured all critical characteristics. *Id.*

Further, in Commerce's confidential final analysis memorandum issued simultaneously, Commerce explained that using a simple average was necessary because Go-Pak Vietnam's paper inputs had base weights of "[

which are [          ] 150 grams/meter$^2$ specified in the description of HS subheading 4810.32.90." Final Analysis Memorandum at 2 (C.R. 184).

Go-Pak subsequently brought the present challenge.

## SUMMARY OF THE ARGUMENT

Commerce's determination should be sustained in its entirety. Go-Pak Vietnam contests both Commerce's consideration of aspects of two financial statements and two HTS subheadings when calculating surrogate values, but fails to establish that Commerce acted unlawfully or unreasonably with regard to either issue.

With regard to the financial statements, Commerce's acceptance of Suparma's financial statement and averaging with Alkindo's, was reasonable and supported by the record. Commerce acted well within its discretion when it found that Suparma produced comparable merchandise because it produced paper for wrapping food. Go-Pak Vietnam's argument does not undermine Commerce's reliance on practice or the record evidence. Further, Commerce reasonably exercised its expertise when determining that averaging AUVS imported under two HTS subheadings would produce a more accurate result. Go-Pak Vietnam fails to confront that Commerce reasonably recognized that paper base weight was a critical component, and, aiming to use the best available information, incorporated subheading 4810.32.90 in the paper input surrogate value calculation. Commerce reasonably calculated the surrogate values here, and Go-Pak Vietnam cannot demonstrate otherwise.

## ARGUMENT

### I.    Standard of Review

In reviewing Commerce's antidumping duty determinations, "the Court of International Trade must sustain 'any determination, finding or conclusion' found by Commerce unless it is 'unsupported by substantial evidence on the record, or otherwise not in accordance with law.'" *Fujitsu Gen. Ltd. v. United States*, 88 F.3d 1034, 1038 (Fed. Cir. 1996) (quoting 19 U.S.C. § 1516a(b)(1)(B)). Substantial evidence means "such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *accord Matsushita Elec. Indus. Co. v. United States*, 750 F.2d 927, 933 (Fed. Cir. 1984). Substantial evidence may be "less than the weight of the evidence," and the possibility of drawing inconsistent conclusions from the record does not render Commerce's findings unsupported by substantial evidence. *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966).

## II. Statutory and Regulatory Framework For Surrogate Value Selections

The antidumping duty represents the amount by which the "normal value" of subject merchandise exceeds its "export price." 19 U.S.C. § 1677b. If Commerce finds that the exporting country is a nonmarket economy (NME) country such as Vietnam, and that available information does not permit the normal value of the subject merchandise to be determined under 19 U.S.C. § 1677b(a), then Commerce determines normal value upon the basis of surrogate values for "the factors of production utilized in producing the merchandise," plus "an amount for general expenses and profit plus the cost of containers, coverings, and other expenses." 19 U.S.C. § 1677b(c)(1)(B). In selecting surrogate data, Commerce enjoys "wide discretion" to determine what constitutes the "best available information." *Nation Ford Chemical Co. v. United States*, 166 F.3d 1373, 1377 (Fed. Cir. 1999); 19 U.S.C. § 1677b(c)(1).

The antidumping statute "does not mandate that Commerce use any particular data source" in reaching its determination. *Guangdong Chems. Imp. & Exp. Corp. v. United States*, 460 F. Supp. 2d 1365, 1368-69 (Ct. Int'l Trade 2006). The factors of production are defined by its control number, or CONNUM. "Using CONNUMs, Commerce defines the key physical characteristics of the subject merchandise as those that are commercially meaningful . . ., and have an impact on costs of production." *An Giang Fisheries Imp. & Exp. Joint Stock Co. v.*

*United States*, 287 F. Supp. 3d 1361, 1368 (Ct. Int'l Trade 2018) (internal quotation omitted). CONNUMs are defined "in terms of a hierarchy of specified physical characteristics determined in each antidumping proceeding." *Xi'an Metals & Mins. Imp. & Exp. Co. v. United States*, 50 F.4th 98, 102 (Fed. Cir. 2022).

The Federal Circuit in *Sigma Corp. v. U.S.* acknowledged that the "process of constructing foreign market value for a producer in a {NME} country is difficult and necessarily imprecise." 117 F.3d 1401, 1408 (Fed. Cir. 1997). Commerce is not required to duplicate the non-market economy manufacturer's experience. *See Nation Ford*, 166 F.3d at 1377 (finding that the best available information regarding valuation of particular factors may be directly analogous to the production experience of the NME producer or it may not). Instead, Commerce seeks to rely on record data that "most accurately represents the fair market value" of the relevant factors. *Id.* Ultimately, given Commerce's discretion and the fact-specific nature of this inquiry, the question for the Court is "not whether the information Commerce used was the best available, but rather whether a reasonable mind could conclude that Commerce chose the best available information." *Jiaxing Bro. Fastener Co., Ltd. v. United States*, 822 F.3d 1289, 1300-01 (Fed. Cir. 2016) (citing *Zhejiang DunAn Hetian Metal Co. v. United States*, 652 F.3d 1333, 1341 (Fed. Cir. 2011)). For this Court to sustain Commerce's determination, Commerce "need not prove that its methodology was the only way or even the best way to calculate surrogate values for factors of production as long as it was a reasonable way." *Coalition for the Preservation of Am. Brake Drum and Rotor Aftermarket Mfr. v. United States*, 44 F. Supp. 2d 229, 258 (Ct. Int'l Trade 1999). Commerce's surrogate value choices here are reasonable and should be sustained.

**III.    Commerce's Determination To Use The Financial Statements Of Suparma Is Supported By Substantial Evidence And Otherwise In Accordance With Law**

Go-Pak Vietnam disagrees with Commerce's choice of surrogate financial statements, asserting that Commerce erred by relying on the financial statements from Suparma as well as Alkindo's financial statements.  Go-Pak Br. at 5-16.  Instead, according to Go-Pak Vietnam, Commerce should have solely relied on Alkindo's financial statements to calculate its surrogate financial ratios.  *Id*.  This argument is unavailing.

Commerce uses the "best available information regarding the values of such factors in a market economy country or countries considered to be appropriate by {Commerce}."  19 U.S.C. § 1677b(c)(1).  In selecting the best available information for valuing the factors of production, Commerce's practice is to select surrogate values that "reflect{} a broad market average, {are} publicly available, contemporaneous with the period of review, specific to the input in question, and exclusive of taxes on exports."  *See Qingdao Sea-Line Trading Co v. United States*, 36 C.I.T. 451, 454 (2012) (quoting *QVD Food Co. v. United States*, 721 F. Supp. 2d 1311, 1315 (Ct. Int'l Trade 2010).  Under the regulation, when calculating a respondent's (1) manufacturing overhead, (2) selling, general and administrative expenses, and (3) profit, Commerce's practice is to use publicly available and complete financial statements of companies producing "identical or **comparable** merchandise" from the primary surrogate country.  19 C.F.R. § 351.408(c)(3) (emphasis added); *see also* PDM at 23; *Notice of Final Determination of Sales at Less Than Fair Value: Chlorinated Isocyanurates from the People's Republic of China*, 70 Fed. Reg. 24,502 (May 10, 2005), and accompanying IDM at Comment 3.  The data Commerce utilizes need not be perfect.  *See Jiaxing Bro. Fastener*, 822 F.3d at 1301 (citing *Home Meridian Int'l, Inc. v. United States*, 772 F.3d 1289, 1296 (Fed. Cir. 2014) ("The data on which Commerce relies to

value inputs must be the 'best available information,' but there is no requirement for the data be perfect.").

Commerce's preference is to derive surrogate overhead expenses, SG&A expenses, and profit using financial statements that (a) cover a period contemporaneous with the period of investigation (POI); (b) show a profit; (c) "from companies with a **production experience similar** to that of the mandatory respondent;" and (d) not distorted or otherwise unreliable, such as financial statements indicating a company received subsidies.  IDM at 13 (emphasis added). While the perfect financial statement to satisfy all these criteria surely exists, they are rarely encountered.  Out of necessity, Commerce's selection based on these criteria demands consideration of imperfect or incomplete data.  While Go-Pak Vietnam may disagree with how Commerce considered the data here, it cannot demonstrate error in Commerce's reasoned choice.

A.    Commerce Did Not Unreasonably Or Unlawfully Ignore Whether Suparma Was An Integrated Producer

Here, Commerce reasonably and lawfully relied on the financial statements of both Alkindo and Suparma because they are contemporaneous with the POI, have comparable production experience to Go-Pak Vietnam, and are publicly available.  *See* PDM at 23-24; *see also* Coalition Surrogate Value Submission at Exhibit 5 (P.R. 123); Go-Pak Surrogate Value Rebuttal Comments at Exhibit 2B (P.R. 147).  Commerce determined that Suparma was a producer of comparable merchandise because it produced laminated paper for holding, placing, and wrapping food.  *See* IDM at 16.  Consequently, Commerce found that using both financial ratios of Suparma and Alkindo were appropriate to approximate the financial costs of Go-Pak Vietnam's production of subject merchandise, reflect a period contemporaneous with the POI, and were the best available information to calculate surrogate financial ratios.  *See* Preliminary Surrogate Value Memorandum at 7 (P.R. 188); Final Surrogate Values Memorandum (P.R. 232)

13

This brings us to the heart of Go-Pak Vietnam's argument. Go-Pak Vietnam asserts that Commerce should not use Suparma's financial statements to calculate surrogate financial ratios because Suparma is not at a similar level of integration, accusing Commerce of failing to address this supposedly central argument. Go-Pak Br. at 8-12. Go-Pak Vietnam attempts to highlight the difference by explaining that Suparma uses paper pulp as a raw material, but Go-Pak Vietnam purchases a finished paper product to produce subject merchandise.[2] *Id*. at 8.

However, while Go-Pak Vietnam criticizes Commerce for failing to address this point, Go-Pak Br. at 9-11, Go-Pak Vietnam's administrative case brief mentioned this issue merely once in passing in the middle of its argument that Suparma does not produce comparable merchandise. *See* Go-Pak Case Br. at 6 (P.R. 218). Commerce need not "specifically address" arguments that are not significant. *Husteel Co., Ltd. v. United States*, 98 F. Supp. 3d 1315, 1359 (Ct. Int'l Trade 2015); *see also Pirelli Tyre Co., Ltd. v. United States*, 128 F.4th 1265, 1271 (Fed. Cir. 2025) ("The substantial-evidence standard requires Commerce to consider all evidence on the record, but such consideration does not necessitate explicit mention and discussion of each piece of evidence."). 19 U.S.C. § 1677f(i)(3)(A) directs Commerce to "address{} relevant arguments" in its final determination. But this obligation does not require that Commerce "address every argument and piece of evidence, . . . {but only} significant arguments and evidence which seriously undermines {Commerce's} reasoning and conclusions." *Altx, Inc. v. United States*, 167 F. Supp. 2d 1353, 1374 (Ct. Int'l Trade 2001); *cf. Sma Surfaces, Inc. v. United States*, 658 F. Supp. 3d 1325, 1329 (Ct. Int'l Trade 2023) ("{I}t is black letter law that—to

---

[2] It is important to note that Go-Pak Vietnam does not challenge the selection of Alkindo's financial statements, which Go-Pak Vietnam describes as an Indonesian producer of **paper** bowls, **paper** cups, **paper** food boxes, and other **paper** products (i.e., comparable merchandise). Go-Pak Br. at 5.

properly preserve an issue for appeal—a party generally must first exhaust its remedies by making its argument before the agency, then brief that argument before the trial court. . . . The argument must be developed for judicial review; perfunctory statements or summary incorporation of prior arguments cannot preserve an issue.").  This alone distinguishes Go-Pak Vietnam's reliance on *Fine Furniture (Shanghai) Limited v. United States*, 182 F. Supp. 3d 1350 (Ct. Int'l Trade 2016) and *Ad Hoc Shrimp Trade Action Comm. v. United States*, 70 F. Supp. 3d 1328 (Ct. Int'l Trade 2015).  *See* Go-Pak Br. at 10.

Regardless, Commerce reasonably considered the record evidence and Go-Pak Vietnam's scant integration argument.  Although Go-Pak Vietnam argues that Suparma is only a producer of paper from raw materials used in the production of papers, Commerce found that record evidence indicated that Suparma's production facility also processes paper inputs into other paper products.  IDM at 16.  For example, Suparma advertised that it was "equipped with varied range of converting machines such as off-cutting machines, rewinding machines, folding machines for tissue products, and laminating machines.  These machines convert base papers produced from our paper machines into various sizes of finished products{.}"  Coalition Surrogate Value Submission at Exhibit 5 (P.R. 123).  These finished products include laminated wrapping kraft and MG paper, which Suparma explained were used for food wrapping paper.  *Id.* Additionally, Go-Pak Vietnam's surrogate value rebuttal included that Suparma was "equipped with a range of converting machines" that could convert "Base Paper produced from the paper machines into finishes products in the form of Sheet or Reel form{.}"  Go-Pak Surrogate Value Rebuttal Comments at Exhibit 2B (P.R. 147).  It also indicated that this process included laminating.  *Id*.  Thus, Commerce reasonably concluded that Suparma processed paper inputs into laminated paper products, which the record demonstrates are used for wrapping food.

Go-Pak Vietnam merely attempts to focus the Court's attention on a singular step in the production process, namely what raw material input is used at the start of production process. Go-Pak Br. at 12. However, Commerce is not required to ensure that every step of the process match identically, only that it is a similar production experience. *See Nation Ford*, 166 F.3d at 1377. Accordingly, Commerce determined that considering the financial ratios of Suparma *and* Alkindo, which both produce paper products that can be used for holding, placing, and wrapping food, was appropriate to approximate the financial costs of Go-Pak Vietnam's production of subject merchandise because together they reflected a period contemporaneous with the POI, had a similar production process, and provided the best available information to calculate surrogate financial ratios.

B.    Commerce's Reasonable Determination That Suparma Is A Producer Of Comparable Merchandise Is Supported By Record Evidence And In Accordance With Law

Neither the statute nor Commerce's regulations specify what may be considered "comparable merchandise." Policy Bulletin 04.1 indicates that an analysis of comparable merchandise must be done on a case-by-case basis:

> in other cases, however, where there are major inputs, i.e. inputs that are specialized or dedicated or used intensively, in the production of the subject merchandise, e.g., processed agricultural, aquatic and mineral products, comparable merchandise should be identified narrowly, on the basis of a comparison of the major inputs including energy, where appropriate.

PDM at 7 (quoting Policy Bulletin 04.1 at 2).

In selecting surrogate data, Commerce enjoys "wide discretion" to determine what constitutes the "best available information." *Nation Ford*, 166 F.3d at 1377; 19 U.S.C. § 1677b(c)(1). The antidumping statute "does not mandate that Commerce use any particular data source" in reaching its determination. *Guangdong Chems. Imp. & Exp. Corp.*, 460 F. Supp. 2d at 1368-69. Here, Commerce relied on the financial statements of Suparma and Alkindo

16

because these Indonesian companies are producers of merchandise comparable to the subject merchandise, reflect a period contemporaneous with the period of investigation, and are best available information to calculate surrogate financial ratios.

Go-Pak Vietnam claims that Suparma is not a producer of comparable merchandise, asserting that Commerce's cited record evidence shows that Suparma is only engaged in paper manufacturing. Go-Pak Br. at 13-14. However, Commerce cited exhibit 5 of the Coalition's submission, which lists a variety of paper products that Suparma provides, including "Laminated Wrapping Kraft," which is "usually applicable for food wrapping paper," and "MG Paper, . .. which can be applied to food wrappers{.}" Coalition Surrogate Value Submission at Exhibit 5 (P.R. 123). It is well within Commerce's discretion to determine that this is comparable merchandise to a paper bowl or paper plate because they are "used for packaging cooked, moist food." IDM at 16; *see Jiaxing Bro. Fastener*, 822 F.3d at 1300-01.

Further, Go-Pak Vietnam asserts that they are not comparable because Go-Pak Vietnam and Suparma operate in different industries under the Global Industry Classification Standard or other categorizations. Go-Pak Br. at 14-15. The statute requires Commerce to consider the comparability of the merchandise, not the comparability of the industry classification, when selecting a significant producer of comparable merchandise. 19 U.S.C. § 1677b(c)(4)(B); *see, e.g.*, *Sebacic Acid from the People's Republic of China; Final Results of Antidumping Duty Administrative Review*, 62 Fed. Reg. 65,674, 65,675-76 (December 15, 1997) ("{T}o impose a requirement that merchandise must be produced by the same process and share the same end uses to be considered comparable would be contrary to the intent of the statute"); *see also* PDM at 7; IDM at 16. Because Suparma produces paper products used for packaging cooked, moist

food, the industry categorizations of Alkindo and Suparma is irrelevant to Commerce's comparability of merchandise analysis. *Id.*

There is substantial evidence on the record to support Commerce's determination that Suparma is a producer of comparable merchandise and that Commerce acted in accordance with the law. Go-Pak Vietnam cannot show error in Commerce's analysis, and this Court should sustain Commerce's averaging of the financial statements.

## IV.    Commerce's Determination To Simple Average The Average Unit Values Of Two HTS Subheading To Account For Production Factors Is Supported By Substantial Evidence And In Accordance With Law

Go-Pak challenges Commerce's decision to use a simple average of two HTS subheadings in order to calculate the surrogate value for its paper inputs. Go-Pak Br. at 18-24. The crux of Go-Pak Vietnam's argument is that Go-Pak Vietnam believes that subheading 4810.92.90 best described its paper inputs. *Id.* at 18-20. In order to determine the surrogate value in this investigation, Commerce used the AUV of Indonesian data under specific HTS subheadings. *See* IDM at 9. For the paper inputs, to capture all product characteristics, Commerce performed a simple average of the AUV data from two subheadings: HTS 4810.92.90 and 4810.32.90. Go-Pak Vietnam would instead have this Court question Commerce's use of both subheadings in favor of Go-Pak Vietnam's own preferred data.

However, Go-Pak Vietnam's argument merely asks the Court to reweigh the same evidence that Commerce already considered. As we demonstrate below, Commerce's determination was supported by substantial evidence and is in accordance with law. The Court should reject Go-Pak's invitation to second-guess Commerce's lawful exercise of its expertise and discretion to determine the best methodology to determine the surrogate value for Go-Pak's paper inputs.

When Commerce evaluates factors of production, "the critical question" is whether Commerce uses the "best available information." *Zhejiang DunAn*, 652 F.3d at 1341 (cleaned up)). The Court should sustain a determination if "a reasonable mind could conclude that Commerce chose the best available information." *Id.* (cleaned up); *Amanda Foods (Vietnam) Ltd. v. United States*, 647 F. Supp. 2d 1368, 1378 (Ct. Int'l Trade 2009). In making use of the information on the record, "there is no principle requiring Commerce to select the most specific HTS category. Rather, Commerce has discretion to select a reasonable surrogate" in light of the relevant criteria. *United Steel & Fasteners, Inc. v. United States*, 469 F. Supp. 3d 1390, 1400 (Ct. Int'l Trade 2020). In this case, Commerce considered all potential sources, identified the strengths and weaknesses of each source, determined that no single source captured all critical characteristics of the relevant input, and reasonably used an average of two imperfect sources to capture all such characteristics.

Go-Pak Vietnam argues that Commerce should have selected subheading 4810.92.90 because its paper inputs meet that subheading's definitions of "multi-ply" paper, width, and chemical composition. Go-Pak Br. at 19-20. But Commerce actually agreed. IDM at 9-10. Commerce specifically valued subheading 4810.92.90 as part of the surrogate value calculation because it "clearly covers the paper input used" by Go-Pak Vietnam when Commerce declined to use subheading 4810.32.90 alone. *Id.* The fact that subheading 4810.92.90 accurately describes the paper input does not undermine Commerce's concern that this subheading alone failed to account for a separate critical component: paper basis weight.

Likewise, Go-Pak Vietnam's argument that subheading 4810.92.90 is accurate because Go-Pak Vietnam uses that subheading when importing is irrelevant for the same reasons. Go-Pak Br. at 18-19. Commerce reasonably exercised its expertise to determine that subheading

4810.92.90 captured many, but not all, of the important physical characteristics of Go-Pak Vietnam's paper inputs. IDM at 9. That finding does not undermine Commerce's determination that subheading 4810.32.90 was essential to capturing an entirely separate, but still critical, characteristic of the input, which subheading 4810.92.90 failed to capture.

Go-Pak Vietnam asserts that subheading 4810.32.90 does not match certain material characteristics of the paper input, including chemical composition and the multi-ply structure. Go-Pak Br. at 20. Again, Commerce agreed. IDM at 9. In the preliminary and final determination, Commerce found that subheading 4810.92.90 alone matches those characteristics. *Id*. However, at verification after the preliminary determination, Commerce received additional information about the paper inputs, specifically the base weights that Go-Pak Vietnam used. *See* Commerce's Factors of Production Verification Report at 11-12 (C.R. 177). As Commerce explained, this revealed important, relevant information related to "a critical component in the manufacture and sale of paper plates as supported by the fact that basis weight is the fourth" product characteristic. IDM at 10. Commerce recognized that subhead 4810.32.90 did not match every physical characteristic of Go-Pak Vietnam's paper inputs, similar to subheading 4810.92.90 which also failed to capture all physical characteristics, but deemed it a part of the best available information, just as it recognized subheading 4810.92.90. *Id*. Further, during the investigation, Go-Pak Vietnam agreed that basis weight was an essential product characteristic, explaining that "paper plates with heavier weights are priced higher than paper plates with lower paper weights." Go-Pak Product Characteristics Comments at 2-3 (P.R. 48).

Go-Pak Vietnam contends that "{t}he record shows that HTS 4810.92.90 fully encompasses Go-Pak Vietnam's paper input, including basis weight" because "{n}othing indicates that HTS 4810.92.90 excludes paper of any particular weight." Go-Pak Br. at 21.

However, Go-Pak provides no record citations to support its assertion. And using a basket category of paper products that include an unknown variety of basis weights uses less product-specific information to measure one of the most important product characteristics for the input. The record evidence demonstrates that HTS 4810.32.90 specifies a paper basis weight greater than 150g/m2, while Go-Pak's proposed HS 4810.92.90 does not specify paper basis weight, presumably including all paper weights. *See* Go-Pak's Rebuttal Surrogate Value Submission at Exhibits 3E, 3F (P.R. 154); Coalition's Pre-Prelim Comments at 7 (P.R. 167, C.R. 93). Go-Pak Vietnam told Commerce that basis weight had a high impact on price, and it is reasonable for Commerce to act on that information. *See* Go-Pak Product Characteristics Comments at 2 (P.R. 48). Commerce reasonably used the best available information to perform the surrogate value analysis. When Commerce has a subheading that specifically captures an important product characteristic, it is within its discretion to use it.

Finally, Go-Pak Vietnam challenges Commerce's simple average as an unreasonable departure from its practice. Go-Pak Br. at 22-24. To be clear, Commerce directly recognized that it was "depart{ing} from our normal practice of selecting one AUV for each input." IDM at 9-10. But Commerce provided a clear, reasoned explanation that it used a simple average because each subheading contained some critical information, but neither addressed all aspects of the paper input. *Id.* "Commerce is permitted to deviate from . . . past practice, at least where it explains the reason for its departure." *Allegheny Ludlum Corp. v. United States*, 346 F.3d 1368, 1373 (Fed. Cir. 2003) (citing *Atchison, Tpoeka & Santa Fe Ry. Co. v. Wichita Bd. Of Trade*, 412 U.S. 800, 808 (1973)).

Specifically, Commerce recognized that a simple average constituted the best available information because using only one subheading "will not adequately capture all aspects of Go-

Pak Vietnam's input." IDM at 10. Commerce acknowledged that subheading 4810.92.90 had critical product characteristics related to the type of paper, and the subheading 4810.32.90 had critical product characteristics related to the weight of the paper. *Id.* at 9-10. Commerce provided a reasoned explanation for this departure from past practice to the extent that Go-Pak Vietnam can demonstrate that Commerce departed from its normal approach.

Go-Pak Vietnam cites a variety of administrative decisions in which Commerce performed an average of HTS categories only when an input falls within multiple classifications, seemingly asserting Commerce acted differently here. Go-Pak Br. at 22-23. However, Commerce's choice here was consistent. IDM at 9-10. For example, Go-Pak Vietnam cites *PET Film from China* as inapposite to Commerce's determination because Commerce averaged when "'the record supports a finding that both HTS subheadings may be equally applicable to Respondents' inputs.'" Go-Pak Br. at 22 (citing *Polyethylene Terepththalate Film, Sheet, and Strip from the People's Republic of China: Final Results of the First Antidumping Administrative Review*, 76 Fed. Reg. 9753 (Feb. 22, 2011)). But Commerce did exactly the same here when it found that both subheadings were applicable to Go-Pak Vietnam's inputs. Instead of showing inconsistency, each one of Go-Pak Vietnam's cited examples equally support Commerce's determination here because Commerce averaged the subheadings after finding that the paper inputs "overlapped multiple HTS numbers." *See* Go-Pak Br. at 23 (citing *Certain Steel Nails from the People's Republic of China: Final Results of Third Antidumping Duty Administrative Review; 2011-2011*, 78 Fed. Reg. 16,651 (March 18, 2013). At worst, this shows that Commerce consistently departs from its practice of using a single HTS subheading when multiple classifications make up the best available information, as here.

In actuality, Go-Pak Vietnam's argument is a mere factual disagreement with Commerce's reasoned decision-making here. "Commerce is required to articulate in what way the surrogate value chosen relates to the factor input." *Fine Furniture (Shaghai) Limited v. United States*, 353 F. Supp. 3d 1323, 1355 (Ct. Int'l Trade 2018) (cleaned up). Here, Commerce provided detailed reasoning for its decision to simple average the surrogate value for the two subheadings. Commerce's use of a simple average in these circumstances is reasonable and should be sustained.

## CONCLUSION

For these reasons, we respectfully request that the Court sustain Commerce's final determination in its entirety and enter final judgment in favor of the United States.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

s/ Claudia Burke
CLAUDIA BURKE
Deputy Director

OF COUNSEL:

Brien Stonebreaker
Attorney
U.S. Department of Commerce
Office of the Chief Counsel for
Trade Enforcement & Compliance
Washington, D.C. 20230

'

s/ Collin T. Mathias
COLLIN T. MATHIAS
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 307-0315
Email: collin.t.mathias@usdoj.gov

*Attorneys for Defendant*

23

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that this brief complies with the word limitation in Court of International Trade Standard Chambers Procedures § 2(B)(1), and contains approximately 6,309 words, excluding the parts of the brief exempted from the word limitation.  In preparing this certificate of compliance, I have relied upon the word count function of the word processing system used to prepare the brief.

<u>/s/ Collin T. Mathias</u>