# UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |  |
|---|---|---|
| GO-PAK PAPER PRODUCTS VIETNAM CO., LTD. | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | Court No.  25-00070 Before:  Senior Judge Richard K Eaton |
| UNITED STATES, | ) ) | |
| Defendant, | ) ) | |
| AMERICAN PAPER PLATE COALITION, | ) ) | |
| Defendant-Intervenor. | ) ) ) | |

## REPLY BRIEF OF
## PLAINTIFF GO-PAK PAPER PRODUCTS VIETNAM CO., LTD.

Jonathan M. Freed
Aqmar Rahman
Didie Muller
**TRADE PACIFIC PLLC**
700 Pennsylvania Avenue, SE, Suite 500
Washington, D.C.  20003
(202) 223-3760

Counsel to Plaintiff Go-Pak Paper Products
Vietnam Co., Ltd.

Dated:  February 16, 2026

**TABLE OF CONTENTS**

<u>Page</u>

**TABLE OF CONTENTS** ........................................................................................ i

**TABLE OF AUTHORITIES** .................................................................................. i

I.    INTRODUCTION ........................................................................................ 1

II.   ARGUMENT ............................................................................................... 2

    A.    DEFENDANT FAILS TO DEFEND COMMERCE'S SURROGATE
    FINANCIAL RATIO DETERMINATION WAS SUPPORTED BY
    SUBSTANTIAL EVIDENCE AND IN ACCORDANCE WITH LAW .............. 2

        1.   Defendant Mischaracterizes the Record and Misapplies Precedent to Excuse
        Commerce's Failure to Address Integration ........................................................ 2

        2.   Defendant's Reliance on Suparma's Converting Operations Does Not Address
        Material Differences in Integration ..................................................................... 5

        3.   Defendant Fails To Defend Commerce's Determination That Suparma Is A
        Producer Of Comparable Merchandise Under The Governing Legal Standard ..... 5

    B.    DEFENDANT-INTERVENOR FAILS TO DEFEND COMMERCE'S
    SURROGATE FINANCIAL RATIO DETERMINATION WAS SUPPORTED
    BY SUBSTANTIAL EVIDENCE AND IN ACCORDANCE WITH LAW ......... 8

        1.   Defendant-Intervenor Fails To Defend Commerce's Determination To Include
        Suparma's Financial Statements On The Basis Articulated In The Final
        Determination ..................................................................................................... 8

        2.   Defendant-Intervenor Mischaracterizes Go-Pak's Argument and Relies on
        "Representativeness" to Avoid Commerce's Obligation Under The Law ............. 9

    C.    DEFENDANT FAILS TO SHOW THAT COMMERCE'S HTS AVERAGING
    DECISION WAS SUPPORTED BY SUBSTANTIAL EVIDENCE AND IN
    ACCORDANCE WITH LAW ............................................................................ 11

        1.   Defendant Fails to Show That Commerce Found Go-Pak's Paper Input
        Overlapped Multiple HTS Subheadings ............................................................ 11

        2.   Defendant Fails to Identify Record Evidence Supporting Commerce's
        Departure from Its Established Approach ........................................................... 13

3. Defendant Fails to Recast Commerce's Unsupported Methodological Error as a Mere Weighing Dispute .................................................................................. 14

D. DEFENDANT-INTERVENOR FAILS TO SHOW THAT COMMERCE'S HTS AVERAGING DECISION WAS SUPPORTED BY SUBSTANTIAL EVIDENCE AND IN ACCORDANCE WITH LAW .......................................... 15

1. Defendant-Intervenor Fails to Cure Commerce's Reliance on an HTS Subheading It Acknowledged That Does Not Describe Go-Pak's Paper Input.... 15

2. Defendant-Intervenor Fails to Demonstrate That Basis Weight Justifies Averaging an Inapplicable HTS Subheading ........................................................ 16

III. CONCLUSION ............................................................................................................ 18

## TABLE OF AUTHORITIES

**Cases**

Husteel Co., Ltd. v. United States, 98 F. Supp. 3d 1315 (Ct. Int'l Trade 2015)..........................2, 3

Pirelli Tyre Co., Ltd. v. United States, 128 F.4th 1265 (Fed. Cir. 2025) ....................................2, 3

Altx, Inc. v. United States, 167 F. Supp. 2d 1353 (Ct. Int'l Trade 2001).......................................4

SMA Surfaces, Inc. v. United States, 658 F. Supp. 3d 1325 (Ct. Int'l Trade 2023) ......................4

Universal Camera Corp. v. NLRB, 340 U.S. 474 (1951) .................................................................7

Burlington Truck Lines, Inc. v. United States, 371 U.S. 156 (1962) ..............................................9

Nan Ya Plastics Corp. v. United States, 37 CIT 188, 905 F. Supp. 2d 1348 (2013)......................9

CC Metals & Alloys, LLC v. United States, 145 F. Supp. 3d 1299 (Ct. Int'l Trade 2016) ...........9

Nagase & Co. v. United States, 628 F. Supp. 3d 1326 (Ct. Int'l Trade 2023) ...............................9

Asociación Colombiana de Exportadores de Flores v. United States, 22 CIT 173, 6 F. Supp. 2d 865 (1998)....................................................................................................................................14

**Statutes**

19 U.S.C. § 1677f(i)(3)(A) ..........................................................................................................2, 4

19 U.S.C. § 1677b(c)(1) ...............................................................................................................15

**Regulation**

19 C.F.R. § 351.408(c)(3)................................................................................................................6

**Administrative Determinations**

Certain Paper Plates From the Socialist Republic of Vietnam: Final Affirmative Determination of Sales at Less Than Fair Value and Final Affirmative Determination of Critical Circumstances, in Part, 90 Fed. Reg. 8,265 (January 28, 2025) and Accompanying Issues and Decision Memorandum.......................................................................................1, 5, 6, 8, 10, 12–15, 17

Notice of Proposed Rulemaking and Request for Public Comments: Antidumping Duties; Countervailing Duties, 61 Fed. Reg. 7308 (February 27, 1996)......................................................6

Pure Magnesium from the People's Republic of China: Final Results of the 2009-2010 Antidumping Duty Administrative Review of the Antidumping Duty Order, 76 Fed. Reg. 76945 (December 9, 2011) and the accompanying Issues and Decision Memorandum ........................... 6

**Other Authorities**

Policy Bulletin 04.1 ............................................................................................... 6, 7, 10

Ct. No. 25-00070

## REPLY BRIEF

### I.    INTRODUCTION

Plaintiff Go-Pak Paper Products Vietnam Co., Ltd. ("Go-Pak Vietnam") hereby replies to Defendant's Response To Plaintiff's 56.2 Motion For Judgment Upon The Agency Record, December 19, 2025 ("Def.'s Resp. Br.") and Defendant-Intervenor's Opposition to the Rule 56.2 Motion, January 20, 2026 ("Def.-Int.'s Resp. Br.").

This action is an appeal from the U.S. Department of Commerce's ("Commerce") final determination in the antidumping duty ("AD") administrative investigation of Certain Paper Plates from the Socialist Republic of Vietnam ("Vietnam").  See Certain Paper Plates From the Socialist Republic of Vietnam: Final Affirmative Determination of Sales at Less Than Fair Value and Final Affirmative Determination of Critical Circumstances, in Part, 90 Fed. Reg. 8,265 (January 28, 2025) ("Final Determination"), P.R. 236, and accompanying Issues and Decision Memorandum for the Final Affirmative Determination of Sales at Less Than Fair Value of Certain Paper Plates from the Socialist Republic of Vietnam (January 21, 2025) ("IDM"), P.R. 227, and accompanying Final Analysis Memorandum (January 21, 2025) ("Final Analysis Memo"), C.R. 184, P.R. 229; Final Surrogate Values Memorandum (January 21, 2025) ("Final SV Memo"), P.R. 232.

Commerce published the antidumping duty order on Certain Paper Plates from Vietnam in the Federal Register on March 20, 2025.  See Certain Paper Plates From the People's Republic of China, Thailand, and the Socialist Republic of Vietnam: Antidumping Duty Orders, 90 Fed. Reg. 13,139 (March 20, 2025) ("AD Order"), P.R. 249, which covers entries of paper plates imported from Vietnam during the period of investigation from July 1, 2023, through December 31, 2023.

Ct. No. 25-00070

Go-Pak Vietnam raised two issues in its moving brief: (1) Whether Commerce erred in calculating surrogate financial ratios for Go-Pak Vietnam because Commerce relied on the financial statements of PT Suparma Tbk ("Suparma"), which (a) operates as an integrated producer using paper pulp as its input, whereas Go-Pak Vietnam purchases paper to produce paper plates, and (b) is not a producer of comparable merchandise. (2) Whether Commerce erroneously determined to use a simple average of the average unit values from two different HTS subheading (i.e., 4810.32.90 and 4810.92.90) to value Go-Pak Vietnam's paper input because HTS 4810.32.90 is not the correct tariff classification for paper input used by the respondent.

## II.    ARGUMENT

### A.  DEFENDANT FAILS TO DEFEND COMMERCE'S SURROGATE FINANCIAL RATIO DETERMINATION WAS SUPPORTED BY SUBSTANTIAL EVIDENCE AND IN ACCORDANCE WITH LAW

#### 1.  <u>Defendant Mischaracterizes the Record and Misapplies Precedent to Excuse Commerce's Failure to Address Integration</u>

Defendant argues that Commerce did not "unreasonably or unlawfully ignore" whether Suparma was an integrated producer and reasonably relied on Suparma's financial statements. Def.'s Resp. Br. at 13. Defendant contends that Go-Pak's argument concerning differences in integration was not a significant issue requiring discussion, asserting that Go-Pak "mentioned this issue merely once in passing" in its administrative case brief. Def.'s Resp. Br. at 14. On that basis, Defendant maintains that Commerce was not required to "specifically address" integration differences and relies on 19 U.S.C. § 1677f(i)(3)(A), <u>Husteel Co., Ltd. v. United States</u>, and <u>Pirelli Tyre Co., Ltd. v. United States</u> for the proposition that Commerce need not explicitly discuss arguments or evidence it deems insignificant. Def.'s Resp. Br. at 14–15.

Ct. No. 25-00070

Defendant's characterization of the administrative record is incorrect.  Contrary to

Defendant's assertion that Go-Pak raised integration only "once in passing," Go-Pak devoted

two pages of its administrative case brief to explaining the fundamental differences between

Suparma's integrated pulp-to-paper manufacturing operations and Go-Pak's non-integrated

converting production, and why those differences materially affect overhead, SG&A, and profit

ratios.  See Go-Pak Vietnam's Case Brief at 6–7, P.R. 218.  This was not a perfunctory reference

or undeveloped assertion, but a significant argument squarely presented to Commerce.

Defendant's reliance on Husteel and Pirelli is therefore misplaced.  In Husteel, the court

upheld Commerce's decision not to address speculative and non-probative evidence that did not

seriously undermine Commerce's reasoning, Husteel Co., Ltd. v. United States, 98 F. Supp. 3d

1315, 1359 (Ct. Int'l Trade 2015) (recognizing "Maverick's argument that Commerce failed to

consider evidence of a "silent agreement" between POSCO and Korean OCTG and line pipe

producers is highly speculative and unpersuasive"), while in Pirelli, the Federal Circuit affirmed

Commerce's rejection of arguments based on foreign law that were unsupported by record

evidence.  Pirelli Tyre Co., Ltd. v. United States, 128 F.4th 1265, 1271 (Fed. Cir. 2025)

("Commerce did not act improperly in declining to consider those arguments given that the

record did not contain the relied-on provisions of Italian law, English translations of them, or

expert analyses of relevant Italian law.").

Here, by contrast, Go-Pak fully developed its integration argument, supported it with

record evidence and Commerce's own practice, and identified material differences that go to the

heart of whether Suparma's financial statements are representative.  See Go-Pak Vietnam's Case

Brief at 6–7, P.R. 218.  Neither Husteel nor Pirelli excuses Commerce's failure to address a

clearly raised, record-based argument central to surrogate selection.

Ct. No. 25-00070

In fact, the law cited by Defendant and the judicial precedent on which Defendant relies confirm that Commerce failed to address a significant argument properly raised by Go-Pak. Under 19 U.S.C. § 1677f(i)(3)(A), Commerce is required to "include in a final determination . . . an explanation of the basis for its determination that addresses relevant arguments, made by interested parties," concerning the determination at issue. 19 U.S.C. § 1677f(i)(3)(A). The cases cited by Defendant reinforce this principle. In Altx, Inc. v. United States, the Court explained that "{w}hile the {agency} need not address every argument and piece of evidence, it must address significant arguments and evidence which seriously undermines its reasoning and conclusions." 167 F. Supp. 2d 1353, 1374 (Ct. Int'l Trade 2001). Go-Pak's argument regarding Suparma's fundamentally different level of integration went directly to whether Suparma's financial statements could reasonably be considered representative of Go-Pak's cost structure. See Go-Pak Vietnam's Case Brief at 6–7, P.R. 218. SMA Surfaces, Inc. v. United States likewise does not excuse Commerce's silence. That decision emphasizes that parties must exhaust their administrative remedies by properly raising and developing arguments before the agency, and that only undeveloped or perfunctory arguments may be deemed waived. 658 F. Supp. 3d 1325, 1329 (Ct. Int'l Trade 2023). Go-Pak satisfied that requirement by squarely raising its integration argument before Commerce and supporting it with record evidence and legal authority. See Go-Pak Vietnam's Case Brief at 6–7, P.R. 218. Having been presented the issue in the briefing, Commerce was required to respond under 19 U.S.C. § 1677f(i)(3)(A).

Under Altx and SMA Surfaces, Commerce was therefore required to address Go-Pak's integration argument because it was significant, fully developed, and significant to the surrogate financial ratio calculations. Therefore, Defendant's own authorities confirm that Commerce did not satisfy its statutory obligation to address relevant arguments in the Final Determination.

Ct. No. 25-00070

      **2.**  **Defendant's Reliance on Suparma's Converting Operations Does Not Address Material Differences in Integration**

Defendant argues that Commerce reasonably considered Go-Pak's integration argument because record evidence showed that Suparma "processes paper inputs into laminated paper products" used for food wrapping and is "equipped with varied range of converting machines," including laminating, cutting, and rewinding equipment.  Def.'s Resp. Br. at 15 (citing IDM at 16; Petitioner's First SV Submission, at Exhibit 5, P.R. 123).  According to Defendant, Commerce was not required to ensure identical production steps so long as Suparma had a "similar production experience."  Def.'s Resp. Br. at 16.

However, the record evidence cited by Defendant does not address the issue that Suparma is an integrated pulp-to-paper producer, whereas Go-Pak is a non-integrated converter that purchases finished paper inputs.  The question is not whether Suparma performs converting operations, but whether Commerce reasonably explained why Suparma's upstream integration, including pulp production and base paper manufacturing, does not materially affect overhead, SG&A, and profit ratios when applied to Go-Pak's non-integrated cost structure.

Accordingly, Defendant's assertion that Go-Pak focuses on a "singular step" in the production process mischaracterizes Go-Pak's argument.  Defendant's attempt to supply that missing analysis through litigation arguments cannot cure Commerce's failure to address the material differences in integration in the Final Determination.

      **3.**  **Defendant Fails To Defend Commerce's Determination That Suparma Is A Producer Of Comparable Merchandise Under The Governing Legal Standard**

Defendant alleges that "Commerce's determination that Suparma is a producer of comparable merchandise is supported by record evidence and in accordance with law."  Def.'s Resp. Br. at 16.  According to Defendant, it was "well within Commerce's discretion" to find

Ct. No. 25-00070

Suparma's products comparable to paper bowls or paper plates because they are "used for packaging cooked, moist food."  Def.'s Resp. Br. at 17 (citing IDM at 16).  In support, Defendant emphasizes that Commerce cited Exhibit 5 of Petitioner's First SV Submission, which lists Suparma's products, including "Laminated Wrapping Kraft" and "MG Paper."  Def.'s Resp. Br. at 17 (citing Petitioner's First SV Submission, at Exhibit 5, P.R. 123).

That response, however, does not defend Commerce's determination under the legal framework governing surrogate financial ratios.  Pursuant to 19 C.F.R. § 351.408(c)(3), Commerce calculates overhead, SG&A, and profit using financial statements from producers of identical or comparable merchandise in the surrogate country, and its regulations and practice emphasize that such data must be "as specific as possible to the subject merchandise."  <u>See Notice of Proposed Rulemaking and Request for Public Comments: Antidumping Duties; Countervailing Duties</u>, 61 Fed. Reg. 7308, 7345–46 (February 27, 1996).  While Commerce has discretion in selecting surrogate data, that discretion is bounded by its obligation to prioritize "specificity, contemporaneity, and quality of the data."  <u>See, e.g.</u>, <u>Pure Magnesium from the People's Republic of China: Final Results of the 2009-2010 Antidumping Duty Administrative Review of the Antidumping Duty Order</u>, 76 Fed. Reg. 76945 (December 9, 2011) and the accompanying IDM at Comment 5.  <u>See also</u> Policy Bulletin 04.1.  As Defendant acknowledges, comparability must be assessed on a case-by-case basis, where there are major inputs, "comparable merchandise should be **identified narrowly, on the basis of a comparison of the major inputs**."  Def.'s Resp. Br. at 16 (citing Policy Bulletin 04.1) (emphasis added).

Defendant's response does not engage with those requirements.  Instead, Defendant merely reiterates Commerce's end-use rationale.  <u>See</u> Def.'s Resp. Br. at 17.  But shared end use alone does not establish comparability under Policy Bulletin 04.1 where the products are

Ct. No. 25-00070

produced using materially different inputs.  As the record shows, Suparma's laminated paper products are produced from pulp, see Go-Pak Vietnam's Rebuttal SV Submission at Ex. 2A, P.R. 146, whereas Go-Pak's subject merchandise is produced from purchased, finished paper inputs. See Go-Pak Vietnam's Supp. 3 Response at SD3-4 and SD3-5, C.R. 96, P.R. 169.  Defendant does not explain how financial ratios derived from pulp-based paper manufacturing satisfy Commerce's own requirement that surrogate data be as specific as possible to Go-Pak's cost experience.

Defendant also mischaracterizes Go-Pak's argument by suggesting that Go-Pak sought to impose an industry-classification test for comparability.  See Def.'s Resp. Br. at 17.  Go-Pak did not argue that Commerce was required to select a surrogate producer operating in the same GICS industry, nor did it contend that industry categorization alone is dispositive.  See Go-Pak 56.2 Br. at 14–15.  Rather, Go-Pak cited industry classifications as record evidence corroborating material differences in the nature of the merchandise produced and the inputs used.  See Go-Pak 56.2 Br. at 14–15.  Defendant's assertion that industry categorizations are "irrelevant" sidesteps the comparability inquiry required by Commerce's regulations and Policy Bulletin 04.1 and Commerce's obligation to take into account that the GICS industry classification of Suparma is substantial evidence detracting from its comparability to Go-Pak.  See Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951).

Because Commerce failed to explain how Suparma's pulp-based paper production yields financial ratios sufficiently specific and representative of Go-Pak's merchandise produced from purchased paper inputs, its conclusion that Suparma produces comparable merchandise is not supported by substantial evidence and is not in accordance with law.

Ct. No. 25-00070

### B. DEFENDANT-INTERVENOR FAILS TO DEFEND COMMERCE'S SURROGATE FINANCIAL RATIO DETERMINATION WAS SUPPORTED BY SUBSTANTIAL EVIDENCE AND IN ACCORDANCE WITH LAW

#### 1. Defendant-Intervenor Fails To Defend Commerce's Determination To Include Suparma's Financial Statements On The Basis Articulated In The Final Determination

Defendant-Intervenor American Paper Plate Coalition ("APPC" or "Petitioner") does not defend Commerce's determination to include Suparma's financial statements on the basis articulated in the Final Determination. Instead, Defendant-Intervenor reframes the issue by asserting that Alkindo's financial statements were allegedly more distorted than Suparma's, arguing that "the record of the investigation reflects that it was actually the financial statements of Alkindo, and not Suparma, that came up short." Def.-Int.'s Resp. Br. at 20. Defendant-Intervenor emphasizes that Suparma derived "99.6 percent of its revenue in 2023 … from the production and sale of paper products," while Alkindo allegedly earned "21.54 percent of its revenue in 2023" from chemical companies and additional revenue from a logistics company. Def.-Int.'s Resp. Br. at 21 (citing Petitioner's First SV Submission, at Exhibit 5, P.R. 123 and Go-Pak Vietnam's First SV Submission, at Exhibit SV-10, P.R. 126). Defendant-Intervenor further asserts that Go-Pak's concerns regarding Suparma's level of integration "pale in comparison" to the overhead and SG&A experience of a company that "potentially earned '25 percent of its revenue from non-paper industries.'" Def.-Int.'s Resp. Br. at 21.

First of all, Defendant-Intervenor's reliance on the assertion that Alkindo earned "25 percent of its revenue from non-paper industries" is misleading. Commerce did **not** confirm the accuracy of that allegation or rely on it as a factual basis for its surrogate selection. IDM at 16. To the contrary, in the Final Determination Commerce expressly stated: "The petitioner also argues that Alkindo earned 25 percent of its revenue from non-paper industries. **Even assuming** *arguendo* **it is true**…" IDM at 16 (emphasis added). That statement reflects a petitioner

8

Ct. No. 25-00070

allegation, not a factual finding by Commerce, and Commerce did not determine that Alkindo in

fact derived 25 percent of its revenue or expenditures from non-paper industries.  Defendant-

Intervenor's repeated assertions that Alkindo potentially earned "25 percent of its revenue from

non-paper industries" mischaracterize the Final Determination.

The Court cannot consider *post hoc* rationalizations to justify an agency's decision.  <u>See</u>

<u>Burlington Truck Lines, Inc. v. United States</u>, 371 U.S. 156, 168 (1962) ("The courts may not

accept appellate counsel's *post hoc* rationalizations for agency action[.]").  <u>See</u> <u>e.g.</u> <u>Nan Ya</u>

<u>Plastics Corp. v. United States</u>, 37 CIT 188, 194, 905 F. Supp. 2d 1348, 1354 (2013) (remanding

because court could not sustain Commerce's determination based only on counsel's *post hoc*

rationalizations); <u>CC Metals & Alloys, LLC v. United States</u>, 145 F. Supp. 3d 1299, 1308 (Ct.

Int'l Trade 2016) (stating "the court cannot defer to the *post hoc* rationalizations of agency

counsel"); <u>Nagase & Co. v. United States</u>, 628 F. Supp. 3d 1326, 1344 (Ct. Int'l Trade 2023)

(remanding because "the Court may not credit the Department of Justice's late attempt to craft an

acceptable rationale supporting Commerce's determination because *post hoc* rationalizations are

not permitted.").

Defendant-Intervenor's attempt to discredit Alkindo does not defend Commerce's

decision to include Suparma's financial statements.  Rather, it is an impermissible *post hoc*

rationalization that shifts the burden away from Commerce's obligation to support its

determination with substantial evidence.  Accordingly, the Court should disregard Defendant-

Intervenor's argument and remand for Commerce to provide a reasoned explanation.

 2. **<u>Defendant-Intervenor Mischaracterizes Go-Pak's Argument and Relies</u>**
 **<u>on "Representativeness" to Avoid Commerce's Obligation Under The</u>**
 **<u>Law</u>**

Defendant-Intervenor argues that Commerce's inclusion of Suparma's financial

statements was reasonable because Commerce's objective in selecting surrogate financial ratios

Ct. No. 25-00070

is "representativeness," not "perfection."  Def.-Int.'s Resp. Br. at 21.  Defendant-Intervenor thus

contends that Commerce was free to include Suparma's financial statements without

meaningfully addressing the material differences between Suparma's integrated pulp-to-paper

manufacturing operations and Go-Pak's non-integrated converting production.  See Def.-Int.'s

Resp. Br. at 21–23.  This premise, however, misstates both Go-Pak's argument and Commerce's

obligation.

Building on this premise, Defendant-Intervenor further alleges that Go-Pak Vietnam

applied a "granular analysis" that imposed "unreasonably narrow limitations" on Commerce's

surrogate selection.  Def.-Int.'s Resp. Br. at 23.  This is incorrect.  Go-Pak does not contend that

Commerce was required to identify a surrogate producer with an identical production experience,

nor does it advocate an "unreasonably narrow" standard of comparability.  See Go-Pak 56.2 Br.

at 8–16.  Rather, Go-Pak's argument is grounded in Commerce's own articulated framework for

identifying comparable merchandise.  See Go-Pak 56.2 Br. at 9–11 (discussing Commerce's

Policy Bulletin 04.1, Commerce's established administrative practice, and judicial precedent

recognizing that Commerce must consider whether a surrogate producer operates at a level of

integration comparable to the respondent).

Consistent with that framework, Commerce is required to consider the level of

integration, among other criteria, when selecting surrogate financial statements.  Go-Pak

therefore argues that Commerce was required to reasonably explain why Suparma's

fundamentally different production structure nonetheless yielded financial ratios representative

of Go-Pak's cost experience.  See Go-Pak 56.2 Br. at 8–12.  Commerce did not do so.  See IDM

at 16, P.R. 227.

Ct. No. 25-00070

Notably, Defendant-Intervenor does not dispute that Commerce has expressed a preference for selecting financial statements from producers operating at a similar level of integration to the respondent, nor does it address the agency determinations and judicial decisions cited by Go-Pak recognizing the relevance of integration in surrogate selection.  See Def.-Int.'s Resp. Br. at 19–23.  Instead, Defendant-Intervenor relies on generalized appeals to "representativeness," without explaining why Commerce could disregard integration here or how Suparma's integrated pulp-to-paper operations reasonably reflect Go-Pak's non-integrated converting production.  See Def.-Int.'s Resp. Br. at 21–23.  Defendant-Intervenor's invocation of Commerce's discretion and generalized notions of "representativeness" cannot substitute for a reasoned explanation of why differences in integration, i.e., differences that directly affect overhead, SG&A, and profit ratios, were immaterial.  Absent such reasoning, Defendant-Intervenor's attempt to reframe non-comparability as acceptable "imperfection" cannot sustain Commerce's selection of Suparma as a surrogate company in the Final Determination.

### C.  DEFENDANT FAILS TO SHOW THAT COMMERCE'S HTS AVERAGING DECISION WAS SUPPORTED BY SUBSTANTIAL EVIDENCE AND IN ACCORDANCE WITH LAW

#### 1.  Defendant Fails to Show That Commerce Found Go-Pak's Paper Input Overlapped Multiple HTS Subheadings

Defendant asserts that Commerce acted consistently with its averaging precedent because it found that "both subheadings were applicable to Go-Pak Vietnam's inputs" and that the paper inputs "overlapped multiple HTS numbers."  Def.'s Resp. Br. at 22.  Defendant further argues that this case mirrors prior determinations, where Commerce averaged HTS categories after finding that "both HTS subheadings may be equally applicable to Respondents' inputs."  See Def.'s Resp. Br. at 22.

Ct. No. 25-00070

Defendant's characterization misstates Commerce's findings.  Commerce did not find that Go-Pak's paper input overlapped multiple HTS subheadings or that both HTS 4810.92.90 and 4810.32.90 described the input.  See IDM, at 9–10.  To the contrary, Commerce expressly found that HTS 4810.92.90 "clearly covers the paper input used" by Go-Pak Vietnam, while acknowledging that HTS 4810.32.90 contains defining physical characteristics that are inconsistent with Go-Pak's paper input, including its paper fiber and paper type.  IDM at 9–10 (recognizing "HS subheading 4810.32.90 also specifies another physical characteristic that is **inconsistent** with Go-Pak Vietnam's paper input, i.e., 'more than 95 % by weight of the total fibre content consists of wood fibres obtained by a chemical process' (TDM), or covers 'kraft paper and paperboard' (GTA)") (emphasis added).  Commerce included HTS 4810.32.90 solely because it specifies a basis-weight threshold that Commerce viewed as important, not because the input could reasonably be classified under that subheading.  See IDM, at 9–10.

Commerce's averaging of two or more HTS categories applies where the record shows that the factor of production reported actually overlaps with multiple HTS categories or where the record lacks information necessary to determine which HTS category applies.  See Go-Pak 56.2 Br. at 22–24.  That is not the case here.  The record reflects neither uncertainty nor overlap.  Instead, it affirmatively demonstrates that Go-Pak's paper input is properly classified solely under HTS 4810.32.90.  See Go-Pak 56.2 Br. at 20–21.  Commerce's decision to average a concededly mismatched HTS subheading based on a single shared characteristic therefore departs from its practice without adequate justification and lacks the support of substantial evidence.

Ct. No. 25-00070

As shown, Defendant fails to identify any record evidence showing that Go-Pak's paper input falls within HTS 4810.32.90, and its attempt to recast this case as one involving overlapping HTS classifications is unsupported by Commerce's own findings.

### 2. Defendant Fails to Identify Record Evidence Supporting Commerce's Departure from Its Established Approach

Defendant contends that Commerce reasonably averaged HTS 4810.92.90 and 4810.32.90 because HTS 4810.92.90, although it "clearly covers the paper input," is silent on basis weight, while HTS 4810.32.90 specifies paper weighing more than 150 g/m², a characteristic Commerce deemed critical. Def.'s Resp. Br. at 19 and 21. Defendant alleges that Commerce "provided a clear, reasonable explanation that it used a simple average because each subheading contained some critical information, but neither addressed all aspects of the paper input." Def.'s Resp. Br. at 21 (citing IDM, at 9–10).

Defendant's argument fails because it identifies no record evidence establishing the factual predicates described in Commerce practice when it averages multiple HTS classifications to value a single factor of production. Defendant points to no evidence showing that HTS 4810.92.90 fails to cover Go-Pak's verified paper weights, nor any evidence demonstrating that HTS 4810.32.90 applies to Go-Pak's paper input despite Commerce's acknowledgment that the subheading contains defining physical characteristics inconsistent with that input. See Def.'s Resp. Br. at 19–22; IDM at 9–10. Defendant points out Commerce's statement that basis weight is a "critical component" because it ranks fourth among the product characteristics. Def.'s Resp. Br. at 21 (citing IDM, at 10). But this observation does not supply substantial evidence supporting the inclusion of an HTS subheading Commerce found otherwise inapplicable. Other characteristics, i.e., paper fiber type and paper type, ranked fifth and sixth in the same hierarchy,

Ct. No. 25-00070

and Commerce expressly acknowledged that HTS 4810.32.90 is inapplicable to Go-Pak's paper inputs.  <u>See</u> IDM at 10; Product Characteristics Memorandum at 1–3, P.R. 88.

Commerce may depart from its prior practice only where a reasonable explanation is supported by substantial evidence and consistent with law.  Go-Pak 56.2 Br. at 22 (citing <u>Asociación Colombiana de Exportadores de Flores v. United States</u>, 22 CIT 173, 184–85, 6 F. Supp. 2d 865, 879–80 (1998)).  Because Commerce's deviation rests on speculation rather than record evidence and reasoned explanation for the departure from practice, it lacks substantial evidence and is not in accordance with law.

### 3. <u>Defendant Fails to Recast Commerce's Unsupported Methodological Error as a Mere Weighing Dispute</u>

Defendant asserts that Go-Pak "merely asks the Court to reweigh the same evidence" and "invitation to second-guess Commerce's lawful exercise of its expertise and discretion."  Def.'s Resp. Br. at 18.  Defendant further characterizes Go-Pak's challenge as a "mere factual disagreement with Commerce's reasoned decision-making."  Def.'s Resp. Br. at 23.

As discussed above, this characterization is incorrect.  Go-Pak does not ask the Court to reweigh competing evidence or to substitute its judgment for Commerce's.  Instead, Go-Pak challenges Commerce's reliance on HTS 4810.32.90, a subheading that Commerce itself acknowledged is not the HTS classification for Go-Pak's paper input, and Commerce's failure to identify substantial evidence supporting that choice.  <u>See</u> IDM at 9–10.  This case therefore concerns substantial evidence and adherence to Commerce practice, not reweighing of evidence.  As explained above, Commerce's decision to simple-average HTS 4810.92.90 and 4810.32.90 is a stark departure from its practice without reasoned explanation accordingly is not in accordance with law.

14

Ct. No. 25-00070

### D.  DEFENDANT-INTERVENOR FAILS TO SHOW THAT COMMERCE'S HTS AVERAGING DECISION WAS SUPPORTED BY SUBSTANTIAL EVIDENCE AND IN ACCORDANCE WITH LAW

#### 1.  <u>Defendant-Intervenor Fails to Cure Commerce's Reliance on an HTS Subheading It Acknowledged That Does Not Describe Go-Pak's Paper Input</u>

Defendant-Intervenor acknowledges that Commerce found HTS subheading 4810.92.90 "clearly covers the paper input used in the production of paper plates."  Def.-Int.'s Resp. Br. at 24 (citing IDM at 9).  Defendant-Intervenor also concedes that HTS subheading 4810.32.90 has "physical characteristics that differed from the paperboard inputs used by Go-Pak."  Def.-Int.'s Resp. Br. at 26 (citing IDM at 10).  Nevertheless, Defendant-Intervenor defends Commerce's decision to average the two HTS subheadings by arguing that HTS 4810.92.90 is a "basket category" that could include thin paper unsuitable for paper plates and therefore fails to reflect Go-Pak's actual inputs.  Def.-Int.'s Resp. Br. at 26.

These concessions underscore, rather than resolve, the defect in Commerce's determination.  Once Commerce found that HTS 4810.92.90 clearly covers Go-Pak's paper input and that HTS 4810.32.90 contains defining characteristics inconsistent with that input, Commerce was required to identify record evidence explaining why averaging in the concededly mismatched subheading nevertheless constituted the "best available information."  <u>See</u> 19 U.S.C. § 1677b(c)(1).  Commerce did not do so, and Defendant-Intervenor's litigation advocacy cannot supply that missing evidentiary support.

Defendant-Intervenor's attempt to undermine HTS 4810.92.90 by labeling it a "basket category" rests on speculation, not record evidence.  <u>See</u> Def.-Int.'s Resp. Br. at 26.  Commerce made an express finding that HTS 4810.92.90 clearly covers Go-Pak's actual paper input.  IDM at 9.  Defendant-Intervenor identifies no evidence that the AUVs under HTS 4810.92.90 are distorted by thin paper or that any such hypothetical distortion affects valuation of Go-Pak's

Ct. No. 25-00070

verified inputs.  See Def.-Int.'s Resp. Br. at 26–27.  Hypotheticals about what a subheading

could include cannot rebut Commerce's express findings about what it does include here.

Defendant-Intervenor devotes substantial attention to arguments it advanced in its

administrative case brief regarding the importance of basis weight.  But the issue before the

Court is not whether basis weight is important in the abstract.  It is whether Commerce identified

substantial evidence supporting its decision to average in HTS subheading 4810.32.90

notwithstanding Commerce's acknowledgment that the subheading is not the HTS classification

covering Go-Pak's paper input.  Neither Commerce's Final Determination nor Defendant-

Intervenor's response identifies such evidence.

### 2.  Defendant-Intervenor Fails to Demonstrate That Basis Weight Justifies Averaging an Inapplicable HTS Subheading

Defendant-Intervenor argues that Commerce reasonably averaged HTS subheadings

4810.92.90 and 4810.32.90 because basis weight is a "critical component" of paper plates.  Def.-

Int.'s Resp. Br. at 25.  Relying heavily on the Product Characteristics Memorandum, Defendant-

Intervenor emphasizes that basis weight ranked higher than paper type in Commerce's

CONNUM hierarchy and asserts that Commerce therefore properly prioritized weight in valuing

Go-Pak's paperboard inputs.  Def.-Int.'s Resp. Br. at 27.  Defendant-Intervenor further contends

that HTS 4810.32.90 was "specific" to Go-Pak because all of Go-Pak's verified paperboard

inputs had basis weights greater than 150 g/m².  Def.-Int.'s Resp. Br. at 27.  Finally, Defendant-

Intervenor invokes Commerce's "wide discretion" to argue that Commerce's surrogate value

selection must be sustained.  Def.-Int.'s Resp. Br. at 28.

These arguments conflate the importance of a characteristic with evidence that an HTS

subheading applies.  That basis weight is important to paper plates does not establish that HTS

4810.32.90 corresponds to Go-Pak's paper input or that HTS 4810.92.90 fails to cover Go-Pak's

Ct. No. 25-00070

verified weights.  Commerce acknowledged that HTS 4810.32.90 contains defining criteria, i.e.,

fiber composition and paper type, that do not describe Go-Pak's paper.  IDM at 10.  The mere

fact that an HTS subheading captures one product characteristic does not supply substantial

evidence to support its use where Commerce has found that the subheading's defining criteria are

otherwise inconsistent with the respondent's input.  See Go-Pak 56.2 Br. at 20–21.

      Defendant-Intervenor's reliance on the CONNUM hierarchy cannot supply the

substantial evidence missing from Commerce's determination.  The Product Characteristics

Memorandum governs product matching for U.S. price comparisons.  It does not dictate

surrogate value selection for factor inputs.  Nothing in Commerce's regulations or practice

permits averaging in an HTS subheading that Commerce itself found inconsistent with the

input's defining characteristics.  Commerce cannot justify that decision simply because one

shared feature—basis weight, ranked fourth in the CONNUM hierarchy—was considered

important.  Other characteristics, including paper fiber type and paper type, ranked fifth and

sixth, are also relevant, and Commerce acknowledged that HTS 4810.32.90 does not meet those

criteria.  See IDM at 10; Product Characteristics Memorandum, at 1–3, P.R. 88.

      In addition, Defendant-Intervenor's assertion that HTS 4810.32.90 was "specific to Go-

Pak" lacks record support.  Def.-Int.'s Resp. Br. at 28.  Specificity cannot be reduced to a single

numerical threshold.  Meeting a weight threshold alone does not make an HTS subheading

applicable when the rest of the description does not fit the input.  See IDM at 10.

      Finally, Commerce's discretion in selecting the "best available information" is bounded

by the requirement that its determination be supported by substantial evidence and in accordance

with law.  Even under the deferential cases Defendant-Intervenor cites, Commerce may not rely

on surrogate data it acknowledges does not describe the input being valued.  As discussed above,

Ct. No. 25-00070

Commerce's departure lacks adequate justification.  See Go-Pak 56.2 Br. at 18–24.  Because

Commerce averaged in HTS 4810.32.90 without record evidence establishing its applicability to

Go-Pak's paper, the determination is not supported by substantial evidence and is not in

accordance with law.

III.    CONCLUSION

   For the foregoing reasons, Plaintiff respectfully requests that the Court grant its Motion

for Judgment on the Agency Record and remand this case to Commerce with instructions

consistent with the points set forth in this Memorandum.

          Respectfully submitted,

          /s/ Jonathan M. Freed
          Jonathan M. Freed
          Aqmar Rahman
          Didie Muller

          TRADE PACIFIC PLLC
          700 Pennsylvania Avenue, SE, Suite 500
          Washington, D.C.  20003
          (202) 223-3760

          Counsel to Plaintiff Go-Pak Vietnam

Dated:  February 16, 2026